**In the Matter of AMERICAN RESERVE CORPORATION, Debtor.**

**Appeal of Clear and Doris Elaine HUDDLESTON.**

**No. 87–1768.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 11, 1987.

Decided Feb. 18, 1988.

John G. Jacobs, Plotkin & Jacobs, Ltd., Chicago, Ill., Richard A. Kirby, Washington, D.C., for appellant.

Leslie D. Locke, Ross & Hardies, Chicago, Ill., for appellee.

Before POSNER and
EASTERBROOK, Circuit Judges, and
GRANT, Senior District Judge.[*]

EASTERBROOK, Circuit Judge.

This interlocutory appeal under 28 U.S.C. § 1292(b) presents the question whether a person may file a proof of claim as representative of others similarly situated in a bankruptcy case. The bankruptcy judge answered yes, the district judge no. 71 B.R. 32 (N.D.Ill.1987). We conclude that class actions may exist within as well as outside bankruptcy, and so reverse the district court's order.

Clear and Doris Elaine Huddleston filed a class action in 1979 in state court contending that Reserve Insurance Co. had defrauded its policyholders by issuing policies between 1977 and 1979 against reserves it knew to be insufficient. Reserve Insurance was declared insolvent that year by the Illinois Director of Insurance. In 1980, before the state court decided whether to certify the class, American Reserve Corporation, a holding company whose assets include all of the stock of Reserve Insurance, filed a bankruptcy petition, which everyone assumes automatically stayed, see 11 U.S.C. § 362, the state suit against Reserve Insurance.[1] The Huddlestons then filed a proof of claim in American Reserve's bankruptcy on behalf of themselves as well as all members of the class of people who purchased policies between 1977 and 1979. The Huddlestons and other policyholders undoubtedly have "claims", because the 1978 overhaul of the Code greatly enlarged the definition of a claim:

> "[C]laim" means—(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured ...

11 U.S.C. § 101(4). American Reserve's trustee contested the representative claim,

maintaining that each policyholder had to file separately. The district court agreed.

■ We start with the Bankruptcy Rules. Bankruptcy Rule 7023 provides: "Rule 23 F.R.Civ.P. applies in adversary proceedings." Bankruptcy Rule 9014, which applies to "a contested matter in a case ... not otherwise governed by these rules" states that "[t]he court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply." Rule 9014 thus allows bankruptcy judges to apply Rule 7023—and thereby Fed.R.Civ.P. 23, the class action rule—to "any stage" in contested matters. Filing a proof of claim is a "stage". All disputes in bankruptcy are either adversary proceedings or contested matters, see Daniel R. Cowans, 1 *Bankruptcy Law and Practice* 189 (1986), so Rule 23 may apply throughout a bankruptcy case at the bankruptcy judge's discretion. Rule 23 provides for filing by a representative, not just prosecution by a representative of claims already pending. So the right to file a proof of claim on behalf of a class seems secure, at least if the bankruptcy judge elects to incorporate Rule 23 via Rule 7023 via Rule 9014, as the judge did in this case. Yet every court that has discussed the question at any length, other than the bankruptcy judge in this case, has come to the opposite conclusion. See *In re Standard Metals Corp.*, 817 F.2d 625, 630–32 (10th Cir.1987), vacated in part on rehearing and decided on other grounds under the name *Sheftelman v. Standard Metals Corp.*, 839 F.2d 1383 (1987); *In re Johns–Manville Corp.*, 53 B.R. 346, 350–54 (Bkr.S.D.N.Y.1985); *In re Baldwin–United Corp.*, 52 B.R. 146 (Bkr.S.D.Ohio 1985); *In re Computer Devices, Inc.*, 51 B.R. 471 (Bkr.D.Mass.1985). Each relied on 11 U.S.C. § 501 and a series of arguments that lead it to conclude that class actions are unnecessary in bankruptcy courts. We take up these arguments before discussing § 501.

---

[*] The Honorable Robert A. Grant, of the Northern District of Indiana, sitting by designation.

[1] The parties assume that American Reserve is responsible for Reserve Insurance's debts, and correspondingly that the automatic stay applies to the suit against the subsidiary. We do the same without evaluating the propriety of this approach.

■ The principal function of bankruptcy law is to determine and implement in a single collective proceeding the entitlements of all concerned. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed. 2d 136 (1979); *Boston & Maine Corp. v. Chicago Pacific Corp.*, 785 F.2d 562, 565 (7th Cir.1986); Thomas H. Jackson, *The Logic and Limits of Bankruptcy Law* 7–33 (1986); Douglas G. Baird, *Loss Distribution, Forum Shopping, and Bankruptcy*, 54 U.Chi.L.Rev. 815 (1987); H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 10 (1978), U.S.Code Cong. & Admin.News 1978, 5963, 5971–72. When there is not enough to go around, the bankruptcy judge must establish priorities and apportion assets among creditors with the same priority, but the starting point is legal entitlements that exist outside of bankruptcy. If American Reserve is liable for fraud, the victims are entitled to recovery—according to their entitlements under substantive law—just as the firm's landlords and vendors of typewriters are entitled to recovery.

Class actions have procedural and substantive advantages. Procedurally, the class action concentrates litigation in a single forum, where it may be resolved more readily than a series of suits could be. See *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 553–54, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974). The bankruptcy forum, as a mandatory collective proceeding, serves this purpose without the overlay of the class action. Substantively, the class action permits the aggregation and litigation of many small claims that otherwise would lie dormant. At least in principle, the class action provides compensation that cannot be achieved in any other way; although the costs of litigation may consume much of the benefit, the device

still serves a deterrent function by ensuring that wrongdoers bear the costs of their activities. *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 338–39, 100 S.Ct. 1166, 1173–74, 63 L.Ed.2d 427 (1980). See Kenneth W. Dam, *Class Actions: Efficiency, Compensation, Deterrence, and Conflict of Interest*, 4 J.Legal Studies 47 (1975); Roger Bernstein, *Judicial Economy and Class Actions*, 7 J.Legal Studies 349 (1978).

The compensatory function is as important inside bankruptcy as outside. Under § 101(4)(A) there may be many "claims" of uncertain value, and holders of contingent claims—such as the policyholders—may not recognize their entitlement to file unless some champion appears.[2] The representative (presumably) has done substantial investigation to identify and shape the claim. Even though there is no fee to file claims in bankruptcy, the opportunity costs of the time needed to investigate and decide whether to file may be substantial, especially because Bankruptcy Rule 9011(a) (a parallel to Fed.R.Civ.P. 11) requires every claimant to investigate the facts and do necessary legal research before filing. The combination of contingent claims (which many people may not identify as something they are entitled to pursue) and the effort needed to decide whether to pursue an identified claim means that for many small claims, it is class actions or nothing.

Outside of bankruptcy, class actions aggregate claims and permit both compensation and deterrence that are otherwise impossible. The same debts should be pursued inside bankruptcy—for other creditors have no right to the higher share of the debtor's assets they can achieve by excluding rival creditors at the threshold.[3] The

---

2. The debtor is entitled to file claims on behalf of such putative claimants, see 11 U.S.C. § 501(c), but the debtor-in-possession or the trustee (who often deems himself the agent of the firm's principal creditors) not suprisingly may find this unattractive. If the claims are going to be extinguished if not pursued—as they probably would be in this case under Chapter 7—the firm's principal creditors do not want to thrust additional hands into the till.

3. The district court's observation that "[c]lass proofs of claim would ... permit creditors who have not made the minimal effort to file a proof of claim to participate in the distribution of the estate, perhaps at the expense of unsecured creditors who properly filed a proof of claim but whose claims were subordinate to those of the class members" (71 B.R. at 35) is an argument in favor of the class device. The members of the class may be entitled to compensation, and if this can be achieved without surplus paperwork so much the better.

class proof of claim may be essential to discover what the bankrupt's entire debts are, and therefore who should be paid what. Presumptively, too, representational litigation is available in federal courts. *Califano v. Yamasaki,* 442 U.S. 682, 700, 99 S.Ct. 2545, 2557, 61 L.Ed.2d 176 (1979) (only a "clear expression of congressional intent" terminates the ability to file representative actions under Rule 23). There is nothing unusual about representative litigation in bankruptcy cases. Quite the contrary, some of the earliest class suits were the creditors' bills that preceded the 1898 Code.[4] One creditor filed suit as a representative of all others of the same class; the proceeds were divided among all creditors who later appeared. E.g., *Handley v. Stutz,* 137 U.S. 366, 11 S.Ct. 117, 34 L.Ed. 706 (1890); *Richmond v. Irons,* 121 U.S. 27, 44, 66, 7 S.Ct. 788, 795, 806, 30 L.Ed. 864 (1887); *Johnson v. Waters,* 111 U.S. 640, 673–74, 4 S.Ct. 619, 637, 28 L.Ed. 547 (1884). These creditors' bills had the features of the modern class action: a single plaintiff, an inquiry into the plaintiff's capacity to act as agent for others similarly situated, and uncertainty until the end of the case who would appear to claim payment (and therefore how much was available for those who did appear). The creditors' bill was a representational suit, not an invitation to joinder.

Plaintiffs and their champions at the bar hold the benefits of class litigation in higher esteem than do courts. The efficiency benefits of consolidation to one side—because bankruptcy achieves them without the need for class suits—class actions are a headache for judges. They are suits that would not exist if each injured person had to litigate separately. And what suits! Each starts off with complex problems about commonality of claims and adequate representation, followed by notice, opt-out, and other procedural issues unique to class actions, on top of which the substance of the case may be very difficult. Class actions consume judicial time, putting off adjudication for other deserving litigants; they impose steep costs on defendants,

even those in the right. The systemic costs of class litigation should not be borne lightly.

More, an action with modest stakes per claimant—the kind of claim that would not be pursued without a class device—is a lawyers' vehicle in the best of times. Since by hypothesis each member of the class needs a champion, none has a stake large enough to make it worth while to monitor the lawyer's performance carefully. The court must do the monitoring, often at great cost in time and even then imperfectly. Because the lawyer-champion is interested in his reward, which will be less than the total gain of the class, the lawyer may settle too quickly rather than risk all in exchange for the prospect of a higher recovery he will not obtain, or the lawyer may accept a settlement package slanted in favor of the fees component. *Mars Steel Corp. v. Continental Illinois National Bank,* 834 F.2d 677, 681 (7th Cir.1987); John C. Coffee, Jr., *The Unfaithful Champion: The Plaintiff as Monitor in Shareholder Litigation,* 48 L. & Contemp. Probs. 5 (Summer 1985); Andrew M. Rosenfield, *An Empirical Test of Class–Action Settlement,* 5 J. Legal Studies 113 (1976). The plaintiffs' stake is even smaller in bankruptcy class actions. Instead of litigating for the actual injury of $10 or $1,000 apiece, members of the class are litigating for a judgment that will be satisfied only in part (perhaps 10% of $10), as other creditors' claims also are written down. As the stake goes down, so does the utility of the class device (net of its substantial costs).

Modest stakes (and a correspondingly high proportion of the total recovery diverted to the class's lawyers or consumed by the costs of administration) are not dispositive against the class device, because it also deters. The payment extracted from the defendant reduces the profitability of wrongdoing, so there will be less tomorrow, even if the victims do not obtain compensation today. But deterrence is less likely in bankruptcy. The threat of extracting money from a corporation deters

---

**4.** There were earlier representational actions, but it is not necessary to recount them. See Stephen C. Yeazell, *From Medieval Group Litigation to the Modern Class Action* (1987).

because it changes the incentives of managers and investors, who bear any sanctions (managers through reduced career opportunities, investors through a reduction in the value of their interests). Shareholders, especially managerial groups holding large blocs of shares, see Harold Demsetz & Kenneth Lehn, *The Structure of Corporate Ownership: Causes and Consequences*, 93 J.Pol.Econ. 1155 (1985), and institutional lenders (indenture trustees and syndicates of banks) are effective monitors. The prospect of a diminution in their stakes induces them to police the firm's conduct; they do not particularly care who gets the penalty but are concerned only to avoid one. In bankruptcy, however, the stakes of these monitors may be zero. The equity interests have been wiped out, the reputations of the managers tarnished no matter what happens in later suits. Secured creditors will take ahead of judgment creditors and so cannot be induced to monitor by a threat of erosion in their positions. Perhaps only general creditors, the sellers of parquet floors to the bankrupt, face further erosion of their positions. General creditors are implausible monitors. Compare *Olympia Equipment Leasing Co. v. Western Union Telegraph Co.*, 786 F.2d 794, 797 (7th Cir.1986), with *id.* at 803 (concurring opinion).

Now the award of damages against a bankrupt will have exemplary effects for firms that are not yet bankrupt but may become so and fear that the damages would eliminate a surplus for equity investors. The effect of legal rules must be assessed before the fact. In some industries the slide into bankruptcy may be unanticipated, so the threat of recovery will deter; in others it may be anticipated and quick, so the deterrent effects of penalties in bankruptcy are correspondingly small. If a class action would greatly complicate a bankruptcy, without yielding significant compensation to injured parties, the mar-

ginal deterrence would not be worth the candle. The trustee in this case makes an argument along these lines. Because bankruptcy is a collective proceeding, it is reduced to the slowest common denominator. Creditors with undisputed claims cannot recover until all of the disputes have been resolved, so that each creditor's share of the total can be computed. The trustee insists that class actions will gum up the works because until the very end no one will know which of the class members will appear to take their shares, and therefore the court cannot determine the entitlements of the other creditors.

This is a serious but not fatal problem. Difficulty in valuation is not unique to class actions. Any unliquidated, contingent claim may be hard to value.[5] At all events, Rule 23(c)(1) requires the court to decide "as soon as practicable after the commencement" of the action whether it may be maintained as a class suit; Rule 23(c)(2) requires the court promptly to cause the members of the class to be notified, so that they can opt out. If the bankruptcy court follows these directives, the class will be certified (or rejected) quickly, and if certified its members will be identified and those uninterested in recovery removed from the class. American Reserve can identify its own policyholders without difficulty, so the notice in this case could be sent with dispatch. The response to the notice under Rule 23(c)(2) is not fundamentally different from the proof of claim; what does differ is the identity of the moving force. In a class action each member of the class gets a notice and then can act; on the district court's view, each member of the class must diagnose his own legal interests and take the initiative. If, as the district court said, filing a proof of claim is so simple that a child can do it, 71 B.R. at 35, then the proof-of-claim and opt-out methods should produce roughly the

**5.** Think of asbestos litigation. It is exceedingly hard to value the claim of a single user of asbestos—perhaps a school district—when there are open questions about the liability of producers of asbestos and even whether a given firm's product was applied to any given building in the school district. Was it used in one building? One hundred? If it was used, and if its use was tortious, what are the damages? Do they include economic loss as well as injury? How can we value injuries that are not yet apparent? The task of valuation may be a good deal easier in a "simple" fraud class action like the one in our case.

same outcome; if, as we think, the costs of information lead many legitimate claimants not to file on their own, then the class device is superior; in either case, the bankruptcy court learns who is interested in recovery.

The problems we have discussed could lead people to conclude that the Bankruptcy Rules should not authorize class actions. But they do, and these considerations do not show that it is always such a bad idea to allow class actions in bankruptcy that courts should deny these Rules their ordinary meaning. Suits for very small stakes may hold out little prospect of either compensation or deterrence; the bankruptcy court may exercise discretion to reject these, for both Rule 9014 and Rule 23 give the court substantial discretion to consider the benefits and costs of class litigation. Suits for larger stakes, based on sound legal theories, may hold out substantial prospects of compensation or deterrence without unduly complicating or delaying the case. Our benchmark—that bankruptcy courts exist to marshal assets and make awards justified by non-bankruptcy entitlements—calls for employing the class device in such cases. If on the day before filing its petition American Reserve had, say, $10 million in assets and was facing a class suit in state court with a probable value of $2 million, its other creditors' interests were worth $8 million. They should receive that payoff in bankruptcy. That most policyholders would not learn of the bankruptcy and the need to file proof-of-claim forms is not a good reason why the other creditors should receive $10 million in the bankruptcy. Jackson, *The Logic and Limits of Bankruptcy Law* at 44–54.

We arrive at 11 U.S.C. § 501, on which courts have relied to conclude that class proofs of claim are forbidden in bankruptcy. *Yamasaki* requires us to determine whether § 501 is a "direct expression by Congress of its intent to depart from the usual course" of employing class actions. 442 U.S. at 700, 99 S.Ct. at 2557. Section 501 provides:

(a) A creditor or an indenture trustee may file a proof of claim. An equity security holder may file a proof of interest.

(b) If a creditor does not timely file a proof of such creditor's claim, an entity that is liable to such creditor with the debtor, or that has secured such creditor, may file a proof of such claim.

(c) If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim.

The statute authorizes some filings by representatives: by an indenture trustee on behalf of a bondholder, a bankrupt's co-debtor or guarantor on behalf of a creditor, and a bankrupt on behalf of a creditor. It is silent on the question whether there may be other representative filings. The district court, 71 B.R. at 34, like the Tenth Circuit's first opinion in *Standard Metals*, 817 F.2d at 630–31, concluded that this list is exclusive. It does not authorize one creditor to file on behalf of another; Q.E.D.

This application of the maxim *expressio unius est exclusio alterius* suffers from the usual weakness of that canon. It begs the question. Why should we infer from the list of ways to do something that there are no others? The legislature does not tie up every knot in every statutory subsection. A list of four ways may imply only that Congress has yet to consider whether there should be others. The history and structure of a statute may show that a list is exhaustive, e.g., *National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974), but also may show that Congress has not grappled with the problem, e.g., *Herman & MacLean v. Huddleston*, 459 U.S. 375, 387 n. 23, 103 S.Ct. 683, 690, n. 23, 74 L.Ed.2d 548 (1983).

Neither the legislative history nor the structure of the 1978 Code suggests that the list in § 501 is exclusive. The history is silent—on class actions, on representative claims in general. The situation tracks that in *Yamasaki*, where the statute creating the right to judicial review provided that an "individual" may obtain review by

filing a civil action. 42 U.S.C. § 405(g). The Court rejected the contention that the statutory specification of individual adjudication is inconsistent with class suits. 442 U.S. at 698–701, 99 S.Ct. at 2556–2557. The structure of § 501 is not fundamentally different. And the filing of representative claims other than those listed would not interfere with the operation of the bankruptcy system. Quite the opposite, some un-enumerated representative filings are essential. Section 501 omits the most common representative filing of all: by an agent on behalf of the principal. Bankruptcy Rule 3001(b) says that a "proof of claim shall be executed by the creditor or the creditor's authorized agent". If § 501 is exhaustive, filings by agents are ineffectual.

Rule 3001(b), and the efficient administration it produces, would not be the only casualty of treating § 501 as exclusive. Rule 7023 would go with it. That rule expressly makes class actions available in adversary proceedings. A class action under Rule 23 is more than permissive joinder —the "spurious class action" under the version of Rule 23 in force between 1938 and 1966. A Rule 23 class action is not simply a device by which one plaintiff prosecutes the case after many have filed separate suits (or intervened in a pending suit); it is a device by which the representative is an agent for persons who have not appeared or given even tacit consent. See Diane Wood Hutchinson, *Class Actions: Joinder or Representational Device?*, 1983 Sup.Ct.Rev. 459, 497–507. If § 501 prevents the class representative from prosecuting the claim on behalf of anyone who failed to file a proof-of-claim form (the equivalent of intervening in the pending bankruptcy case), then there will never be a *Rule 23* class action; there will only be a "spurious class action"; yet Bankruptcy Rule 7023 says that there are to be Rule 23 class actions in bankruptcy.

Section 501 does not interfere with filing by agents. The representative in a class action is an agent for the missing. Cf. *United States Parole Commission v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) (two cases that by allowing class actions to survive the mootness of the representative's claim show that the representative must be an agent for others with live claims). Not every effort to represent a class will succeed; the representative is an agent only if the class is certified. Putative agents keep the case alive pending the decision on certification. See *Geraghty;* cf. *American Pipe* (the filing of a class suit suspends the statute of limitations for all members of the class, even though the district court does not certify the class originally requested). If the bankruptcy judge denies the request to certify a class, then each creditor must file an individual proof of claim; the putative agent never obtains "authorized agent" status. If the court certifies the class, however, the self-appointed agent has become "authorized", and the original filing is effective for the whole class (the principals).[6] It follows that there may be class proofs of claims in bankruptcy.

Although we conclude that a representative may file a proof of claim on behalf of a class of similarly-situated persons, this does not necessarily mean that the Huddlestons may represent a class of policyholders. The bankruptcy judge has not certified the class; he has decided only that Rule 23 is applicable. The trustee suggests that the Illinois Director of Insurance, as receiver of Reserve Insurance, is the right representative of the policyholders; if so, the Huddlestons' motion should be denied. The bankruptcy judge has yet to consider the features, which we have discussed, that may make class certification less desirable in bankruptcy than in ordinary civil litigation. The judge also did not consider whether his control of the bankrupt's affairs might make class certification unnecessary. The judge might consider directing the trustee to send, to all

---

**6.** This satisfies Bankruptcy Rule 2019, which requires agents to explain the circumstances of their agency.

persons who purchased Reserve Insurance's policies between 1977 and 1979, a notice informing them of the bankruptcy and the case the Huddlestons filed in state court, and a proof-of-claim form. This package could invite them to file claims if they are so minded. Such a procedure might achieve the principal benefit of the class action device while preserving what the district court saw as the principal benefits of individual claims. *Sheftelman v. Standard Metals Corp.*, 839 F.2d 1383, 1386–1389 (10th Cir.1987), concludes that Bankruptcy Rule 2002 requires notice to be given as of course to identifiable creditors—which these policyholders are. Finally, the bankruptcy judge did not recognize that he has discretion under Rule 9014 not to apply Rule 7023—and therefore not to apply Rule 23—in this "contested matter". We trust that the bankruptcy judge will exercise discretion prudently on remand. The district court may review any decision by interlocutory appeal under 28 U.S.C. § 158(a); we are confident that this discretion, too, will be exercised wisely.

REVERSED AND REMANDED.