In re ZENITH LABORATORIES, INC., Zenith Parenterals, Inc., Zenith Laboratories, Caribe, Inc., RMWB Associates, Inc., Debtors.

ZENITH LABORATORIES, INC., Plaintiff,

v.

Samuel SINAY, Jacob Rosenbaum, W. Clay Choate, Priscillano and Lydia Bulaon, Edwin B. Carton, Samuel Damesek, Ian K. Portnoy, Stephen A. Bodzin as Trustee for the Stephan A. Bodzin Pension Trust, and Mark London, Defendants.

Bankruptcy Nos. 88–3602, 88–3603, 88–3648 and 88–4263.
Appeal No. 89–983.
Adv. No. 88–0960.

United States District Court, D. New Jersey.

Aug. 29, 1989.

Kimmelman, Wolff & Samson by Robert Nies, Roseland, N.J., Goodkin, Labaton & Rudoff by Martiss Anderson and Lynda Jacobs, New York City, Pomerarntz, Levy, Haudek, Block & Grossman by Marc I. Gross, New York City, for defendants Sinay, Jacob, Rosenbaum, Choate, Bulaon, Chestman and Damesek.

Ravin, Sarasohn, Cook, Baumgartner, Fisch & Baime by Kenneth Rosen, Roseland, N.J., Cadwalader, Wickersham & Taft by Mark C. Ellenberg, Washington, D.C., for debtors.

## OPINION

DEBEVOISE, District Judge.

This is an appeal brought pursuant to 28 U.S.C. sec. 158(a) and Bankruptcy Rule 8001(a) from an order of the bankruptcy court (1) denying a motion brought by debtor shareholders modifying the automatic stay of proceedings against the debtor because of their failure to file individual proofs of claim and (2) staying certain class actions against corporate directors of the debtor alleging violations of the federal securities laws.

### I.  Background

On January 7, 1987 a consolidated class action was filed in this court (Civil Action No. 86–3421A) against Zenith Laboratories, Inc. ("Zenith") and three Zenith executives, James Leonard, then President and Chief Executive Officer, John Farber, Chairman of the Board, and Robert A. Rees, then a director and vice president.  The "Consolidated, Supplemental and Amended Complaint" (hereinafter the "consolidated complaint") alleges violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Securities Act"), 15 U.S.C. sec. 78j(b), SEC Rule 10b–5 promulgated thereunder, and Section 20 of the Securities Act, 15 U.S.C. sec. 78t(a), as well as a common-law claim for negligent misrepresentation.  Two individual actions making similar allegations against the same and other defendants were also consolidated with the previously-consolidated class action.  (All pending shareholder actions against Zenith are referred to as the "shareholder actions").  I entered an opinion and order on February 8, 1988 certifying a plaintiff class pursuant to Fed.R.Civ.P. 23(c) comprised of all persons who purchased Zenith stock between March 6 and August 6, 1986 and who suffered damages.  Plaintiffs estimate that the class is comprised of more than 2,500

people and has claims valued in excess of $50,000,000.

On May 4, 1988, Zenith Laboratories, Inc. ("Zenith") filed a voluntary petition under Chapter 11 of the bankruptcy court in the United States District Court for the Southern District of New York. Pursuant to Section 363 of the Bankruptcy Code (the "Code"), this filing automatically stayed the shareholder actions. On May 26, 1988, venue in the case was transferred to the District of New Jersey. Zenith has been permitted to continue to operate its business as debtor in possession pursuant to sections 1107 and 1108 of the Code, 11 U.S.C. sections 1107, 1108 (1982).

The class representatives in the shareholder actions filed, on behalf of themselves and the class, what purports to be a "Proof of Claim on Behalf of Class Claimants" on August 25, 1988. This claim is for damages suffered by the class as described in the consolidated complaint.

On October 17, 1988, the plaintiff class filed a motion before the bankruptcy court seeking a modification of the automatic stay to permit the continuation of litigation against Zenith. The motion was briefed and a hearing was conducted before the bankruptcy court on November 7, 1988 at the conclusion of which the judge reserved decision. Before a decision was rendered, the plaintiff class noticed depositions of three current Zenith employees and one former employee scheduled to commence in December. The plaintiff class also allegedly expressed the intent to depose a number of other current Zenith employees. In response to plaintiffs' deposition notices and the prospect of additional future depositions, Zenith filed a motion before the bankruptcy court on November 16, 1988 seeking a stay of the actions against the individual codefendants in the securities actions. This motion was argued on November 22 at which time the bankruptcy judge requested supplemental briefing and announced that he would hand down a single opinion addressing both the plaintiffs' motion for a lifting of the automatic stay and Zenith's motion for a stay of the proceedings against the individual codefendants in the shareholder actions.

In an order and opinion issued on January 23, 1989, the bankruptcy judge denied plaintiffs' motion to modify the stay and granted Zenith's motion to stay further proceedings against the codefendants in the shareholder actions. This timely appeal followed. I will consider separately the plaintiff class' grounds for appeal.

## II. The Order Denying the Motion to Modify the Stay of the Shareholder Actions Against the Debtor

When a petition in bankruptcy is filed, the commencement or continuation of all judicial proceedings is automatically stayed. 11 U.S.C. sec. 362(a). This stay is intended to protect the debtor from its creditors and to permit time to formulate a workable plan of reorganization and payment. *E.g., Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 55 (2d Cir.1976), *cert. denied*, 430 U.S. 976, 97 S.Ct. 1670, 52 L.Ed.2d 372 (1977).

Nonetheless, the Code recognizes that there is frequently a need to respond to other interests and permits a flexible approach to the stay as the circumstances may require. The bankruptcy court is empowered to lift or modify the stay "for cause, including the lack of adequate protection" of a party in interest's property, among other reasons. 11 U.S.C. sec. 362. The bankruptcy judge's determination in this regard will not be disturbed on appeal unless it amounts to a clear abuse of discretion. *In re Johns Manville*, 40 B.R. 219, 226 (S.D.N.Y.1984); *In re Frigitemp Corp.*, 8 B.R. 284, 289 (Bankr.S.D.N.Y. 1981).

The bankruptcy court did not reach the merits of the motion to modify the stay. The court ruled that the motion was premature because the individual members of the plaintiff class had failed to file proofs of claim in the bankruptcy proceeding, and since class proofs of claim are not permitted under 11 U.S.C. sec. 501.

Section 501 of the Bankruptcy Code requires those with claims against or inter-

ests in the debtor's assets to file proofs with the bankruptcy court:

Section 501. Filing of proof of claim claims or interests.

(a) A creditor or an indenture trustee may file a proof of claim. An equity security holder may file a proof of interest.

(b) If a creditor does not timely file a proof of such creditor's claim, an entity that is liable to such creditor with the debtor, or that has secured such creditor, may file a proof of such claim.

(c) If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim.

The bankruptcy court observed that this section does not, on its face, permit class proofs of claim.

The bankruptcy court also advanced a number of other arguments supporting its position which have been accepted in greater or lesser degree by the vast majority of lower courts that have considered the issue.[1] The bankruptcy court noted that the "main purpose of the class action is to concentrate related litigation in a single forum where disputes may be resolved more effectively and expeditiously," and that since this policy is satisfied by the bankruptcy court's assumption of jurisdiction over all the claims against the debtor, "the need for class action in the bankruptcy setting is greatly diminished." Bankruptcy Court Opinion of Jan. 23, 1989 ("Opinion") at 9. The court also observed that since Congress made provisions for class proof of claim in the context of indenture trustees under Section 501(a), "[t]he omission of a similar provision for other types of class claimants indicates the intent of Congress to exclude such class proof of claim." Opinion at 11 citing *Dade County School Dist. v. Johns–Manville Corp. (In*

*re Johns–Manville), 53 B.R. 346, 350–51 (Bankr.S.D.N.Y.1985).*

■ This view has been adopted by one circuit, *see Sheftlemen v. Standard Metals Corp. (In re Standard Metals Corp.),* 817 F.2d 625 (10th Cir.), *modified on reh'g on other grounds,* 839 F.2d 1383 (1987) and a score of lower courts. The two other circuits that have considered this issue, however, have held that class proofs of claims should be permitted. *See In re American Reserve Corp.,* 840 F.2d 487, 489 (7th Cir. 1988); *In re Charter Co.,* 876 F.2d 866 (11th Cir.1989). Although the United States Court of Appeals for the Third Circuit has not considered this issue, the policies underlying the class action and Congress' explicit provision for the application of Fed.R.Civ.P. 23 to bankruptcy proceedings support the view that the latter cases set forth the better rule.[2]

One of the goals of the class action is to aggregate common claims in a single forum. *See, e.g., American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 553–54, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974). As the bankruptcy judge observed, this policy is served through the mechanism of the bankruptcy proceeding itself, independent of the class action rules.

But the class action serves purposes other than judicial economy. One of its most important functions is to make possible the maintenance of many small claims "that would otherwise lie dormant." *In re American Reserve Corp.,* 840 F.2d 487, 489 (7th Cir.1988). The class action increases the likelihood that the small claimant will be represented and thereby "serves a deterrent function by ensuring that wrongdoers bear the costs of their activities." *Id.* Since there are significant opportunity costs associated with identifying

---

1. For the cases that reach the contrary conclusion, and the few district and bankruptcy court opinions that have permitted class proofs of claim, *see In re Charter Co.,* 876 F.2d 866, 869 n. 3 (11th Cir.1989).

2. Although under the former Bankruptcy Act the Third Circuit expressed doubts about the propriety of class certification in bankruptcy

proceedings, *see Securities and Exchange Comm'n v. Aberdeen Securities Co.,* 480 F.2d 1121, 1128 (3d Cir.), *cert. denied,* 414 U.S. 1111, 94 S.Ct. 841, 38 L.Ed.2d 738 (1973), classes are now regularly certified under the Bankruptcy Code, *e.g., In re Whittaker,* 882 F.2d 791, 793, n. 1 (3d Cir., 1989) (declining to review certification).

and investigating claims and since many potential litigants with small claims are unaware of the full scope of their rights in bankruptcy, the class action may be the only practical means of permitting small claims to be brought.[3] As the *American Reserve* court observed, "for many small claims, it is class actions or nothing." *Id.* To deny the use of a class claim would frustrate this policy and, as a practical matter, leave the majority of small claimants in bankruptcy proceedings without a remedy.

Congress provided that the rules governing class actions may apply to bankruptcy proceedings. Bankruptcy Rule 7023 states that "Rule 23 F.R.Civ.P. applies in adversary proceedings." Bankruptcy Rule 9014 applies to "a contested matter in a case ... not otherwise governed by these rules." It provides that the court "may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply." Thus, Rule 9014 permits the application of Rule 7023 and with it the latter's inclusion of Fed.R.Civ.P. 23.

The fact that Congress failed to create an explicit provision for the filing of class claims does not definitively settle the question. It is clear that in at least one other context Section 501 of the Code is not treated as an exhaustive list of who may file representative claims. Bankruptcy Rule 3001(b) provides that a "proof of claim shall be executed by the creditor or the creditor's authorized agent." As the *American Reserve* court noted, "[i]f section 501 is exhaustive, filings by agents are ineffectual." 840 F.2d at 493. For this reason, both the *Charter* and *American Reserve* courts declined to apply the doctrine of *expressio unius est exclusio alterius* to Section 501 of the Code. *See Char-*

ter, 876 F.2d at 871; *American Reserve*, 840 F.2d at 492.

To disallow a class proof of claim would effectively prohibit the use of class actions in bankruptcy altogether.

A Rule 23 class action is not simply a device by which one plaintiff prosecutes the case after many have filed separate suits (or intervened in a pending suit); *it is a device by which the representative is an agent for persons who have not appeared or given even tacit consent* .... If section 501 prevents the class representative from prosecuting the claim on behalf of anyone who failed to file a proof-of-claim form (the equivalent of intervening in the pending bankruptcy case), then there will never be Rule 23 class action; there will only be a 'spurious class action'; yet Bankruptcy Rule 7023 says that there are to be Rule 23 class action in bankruptcy.

840 F.2d at 493 (emphasis added; citations omitted).

Further, although the legislative history is silent on the question of whether class claims should be permitted, it does demonstrate a congressional intent "to open bankruptcy proceedings to the widest possible range of 'players.'" *Charter*, 876 F.2d at 870. The definition of a claim was expanded in the Code to include claims that are "liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. sec. 101(4). This was clearly an effort by Congress to expand participation in bankruptcy proceedings.

"The effect of the definition is a significant departure from present law ... By this broadest possible definition, and by the use of the term throughout the title 11 ... the bill contemplates that all legal

---

**3.** To the individual litigant, the perceived costs of investigating a smaller potential claim may be thought to exceed the expected benefits. The individual litigant is unsure of his or her rights, wary of expending resources in an uncertain endeavor with an unknowable outcome, and, because of the modest size of the claim, frequently unable to secure legal representation. Thus the potential litigant may conclude that his or her resources are better spent on some other pursuit. The class action provides a champion to investigate similar claims, diminishes uncertainty regarding the legal status of the claim, and, by aggregating the claims, effectively distributes the costs of investigation that would otherwise be borne on an individual basis over the class membership. This procedural device thus readjusts the cost-benefit analysis and ensures that smaller claims whose combined value is significant cannot be avoided by a wrongdoer merely because of their individual size.

obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy court. It permits the broadest possible relief in the bankruptcy court."

H.Rep. No. 595, 95th Cong., 1st Sess. 309 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6266 (reprinted in notes following 11 U.S.C.A. sec. 101 (1979)) *quoted in Charter*, 876 F.2d at 870. As the *Charter* court noted, a restrictive reading of Section 501 would frustrate this goal. *Id.* Class actions, moreover, are consistent with the broader goals of bankruptcy in facilitating creditor compensation and ensuring equitable distribution of the debtor's assets.

The unarticulated premise of the opinions in the cases where class proofs of claims were disallowed seems to be that the policies underlying class actions are hostile to the policies the Bankruptcy Code advances. According to this view, rather than being provided the opportunity to "opt out" of a class, small claimants should, in the words of appellee's counsel, be required to demonstrate that their claims are "worth the candle" by filing individual proofs of claim. This procedure effectively requires the small claimant to "opt in." Perhaps this perspective reflects the view that the debtor's assets are to be conserved for larger creditors. This policy, however, is utterly without support in the Code or its legislative history. By the extension of Fed.R. Civ.P. 23 to bankruptcy proceedings and the broad definition of what constitutes a claim, it is clear that Congress did not believe that the policies underlying bankruptcy and class actions were in conflict. For these reasons, class proofs of claims should be permitted in adversary proceedings or when the bankruptcy judge has exercised his or her discretion under Bankruptcy Rule 9014 to apply Fed.R.Civ.P. 23 to a contested matter.

In this case, the purported class proof was a contested matter. Under Bankruptcy Rule 9014, therefore, the bankruptcy judge could have decided to apply Fed.R.Civ.P. 23. Having thus framed the issue, however, it becomes clear that the bankruptcy judge's order denying the motion to modify the stay against the debtor must be affirmed, although on separate grounds. The plaintiff class has not petitioned the bankruptcy court to apply Rule 23 to this matter nor sought class certification. Clearly, there are compelling reasons for certifying the shareholder class as I concluded when I certified the class in this court on February 8, 1988. However, there may be other factors in the bankruptcy proceeding that make class certification there less compelling and it may be possible that a different result might be appropriate. *See American Reserve*, 840 F.2d at 493–94.

In conclusion, the order of the bankruptcy court denying the motion for a modification of a stay of the shareholder actions against the debtor is affirmed on separate grounds. The appellants may seek the application of Fed.R.Civ.P. 23 to Section 501, however, in accord with the above discussion.

### III. The Order Staying the Shareholder Actions against Non-debtor Codefendants

The debtor filed an adversary complaint seeking an order declaring the shareholder actions stayed and moved for an order preliminarily enjoining noticed depositions. The court stayed all eight shareholder actions and any discovery in these actions. The bankruptcy court held that the debtor's prepaid directors and officers liability policy was "property" within the meaning of Section 362(a)(3) of the Code which stays any action "to obtain possession of property of the estate or to exercise control over property of the estate." As the court noted, this section stays both actions brought directly against the debtor or indirectly against a third party. *A.H. Robins v. Piccinin (in re A.H. Robins Co.)*, 788 F.2d 994, 1001 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986).

The bankruptcy court stayed discovery against the non-debtor codefendants who are not officers under the authority of 11 U.S.C. sec. 105(a) which provides that "[t]he bankruptcy court may issue any or-

der, process, or judgment that is necessary or appropriate to carry out the provisions of this title." According to its legislative history, this section confers "all the traditional injunctive powers of a court of equity" upon the bankruptcy court and the court may stay actions not included within the provisions of the automatic stay if the traditional requirements for an injunction are satisfied. S.Rep. No. 95–989 (95th Cong., 2d Sess.), *reprinted in* 1978 U.S. Code Cong. & Admin.News at 5787. Accordingly, the bankruptcy court applied the factors enumerated in *United States v. Price*, 688 F.2d 204, 211 (3d Cir.1982) for the issuance of a preliminary injunction: likelihood of success on the merits, irreparable harm to the movant, harm to other parties and the public interest.

The bankruptcy court concluded that because the debtor faced a deepening financial crisis, the failure to stay the shareholder actions against codefendants unconnected with the debtor at this time would cause the debtor irreparable harm. The bankruptcy court noted that deadline for the exclusive filing of a proposed plan of reorganization by the debtor which was to expire at the end of May and that the debtor continued to lose large sums of money at an increasing rate. It concluded that to involve employees in time-consuming depositions and burdensome document requests at that time would work to distract key personnel from the important business of getting the debtor back on its feet.

In addition, the bankruptcy court observed that a delay of several months would cause little if any harm to the plaintiff class and that the public interest favored providing the debtor with a "breathing spell" from its creditors to enable it to develop repayment and reorganization plans. The parties agree that the bankruptcy court's ruling on this matter cannot be reversed unless it amounted to a clear abused of discretion. *In re Holtkamp*, 669 F.2d 505 (7th Cir.1982); *In re Frigitemp Corp.*, 8 B.R. 284, 289 (Bankr.S.D.N.Y. 1981).

The parties vigorously contest the issue of whether or not the directors and officers insurance policy is the "property" of the debtor's estate. Or, to state the question in somewhat broader terms, whether the continuance of an action against the directors and officers would diminish or augment the property of the debtor estate.

The cases relied upon by the bankruptcy court do not stand for the proposition that an insurance policy paid for by the debtor is, ipso facto, a debtor asset. An insurance policy purchased by the debtor is only an asset to the extent that it increases the debtor's worth or diminishes its liabilities. If the policy, although paid for by the debtor, fails to meet this test, it cannot be said to be a debtor asset. The $25,000,000 policy in question covers any litigation expenses and damages incurred by the directors and officers as a result of their misconduct. The policy carries a $10,000 deductible. The only instance in which the debtor would receive payment under the policy would be if the debtor were required to indemnify the directors and officers for any expenses or damages which they incurred in the course of litigation pursued against them. This is a matter governed by the corporate bylaws and the relevant state law.

Article VI of the Zenith by-laws provides that the corporation "shall indemnify any person in the manner and to the extent provided in the Business Corporation Act [BCA] of the State of New Jersey." The BCA provides, in N.J.S.A. sec. 14A:3–5(2), that a corporation "shall have the power to indemnify a corporate agent against his expenses and liabilities" if the corporate agent "acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation." It further provides, in N.J.S.A. sec. 14A:3–5(4), that a corporation "shall indemnify a corporate agent against expenses to the extent that such corporate agent has been successful on the merits or otherwise ... or in the defense on any claim, issue or matter therein."

As these provisions demonstrate, the debtor is not required by its bylaws to indemnify its directors; it may choose to do so if the directors acted in good faith and in such a manner that a reasonable person might conclude was not opposed to the best interests of the corporation. Although the

debtor argues that it might choose to do so, and that it would then be required to pay any amount exceeding the policy coverage, this is a purely theoretical possibility. Nor is the debtor unconditionally required to reimburse the directors for litigation expenses; the debtor must pay only if the directors prevail. Although in this case the debtor might be required to pay the amount of the deductible for expenses, since this liability is currently contingent it appears that it would be disallowed under Section 502(e)(1)(B) of the Code which provides that the bankruptcy court "shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor ... to the extent that ... such claim for reimbursements or contribution is contingent as of the time of allowance of such claim for reimbursement or contribution ..."

The cases relied upon by the bankruptcy court for the contrary conclusion do not appear to be in conflict with this result. Both *A.H. Robbins Co. v. Piccinin (In re A.H. Robins Co.)*, 788 F.2d 994, 1001 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986) and *In re Minoco Group of Companies, Ltd.*, 799 F.2d 517, 519 (9th Cir.1986) involved directors and officers liability policies but in those cases, unlike the present case, the directors had a clear right of indemnity against the debtor. The products liability policies in *In re Johns–Manville Corp.*, 40 B.R. 219, 229 (S.D.N.Y.1984) and *In re Davis*, 730 F.2d 176 (5th Cir.1984) both involved products liability policies which named the debtors as beneficiaries. *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391 (5th Cir. 1987) is also distinguishable. That case involved a directors and officers liability policy, apparently like the one here, that provided direct coverage for the directors or reimbursed the debtor corporation for indemnification of the directors. Under state law in that case, the debtor was required to indemnify the directors for expenses incurred in defending a suit regard-

less of the ultimate result. A creditor's committee brought suit against several directors in the name of the debtor. The insurance company began to pay the directors' legal expenses pursuant to the terms of the policy. These payments simultaneously diminished the coverage that would be available to the debtor if it prevailed in its action against the directors. Thus that policy tangibly affected the assets and liabilities of the debtor. In the present case, however, the corporation is not unconditionally required to reimburse its officers and directors for legal expenses and it does not appear that any action has been initiated in the debtor's name against the directors.

█ This leaves as the basis for the court's decision only its authority to stay related actions under section 105. This foundation, however, is sufficient. The court's conclusions regarding the *Price* standards simply do not rise to the level of abuse of discretion. There is evidence on the record in the form of the quickly approaching deadline for the filing of the plan of reorganization and the increasingly perilous financial position of the debtor that support a finding of irreparable harm. The public interest in permitting the debtor the space it needs in order to rehabilitate itself would also be served by a stay. Finally, a stay of "several months" as the bankruptcy court described it, would not greatly harm the interests of the plaintiff class in prosecuting the shareholder actions. That class can always move to lift the stay when circumstances change, as they may have by now, for better or for worse.[4]

### IV. Conclusion

For all of the reasons above, the bankruptcy court's order is affirmed. An appropriate order will be entered.

---

**4.** Technically, the bankruptcy court exercised its power under Section 105 to stay only the shareholder actions as they related to the non-debtor codefendants who were no longer directors or employees of the company. Obviously, however, this power extends *a fortiori* to non-debtor codefendants who are still with the company and justifies that part of the bankruptcy court's order relating to them.