13-2581
In re: Dynegy, Inc.,

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

_____

August Term, 2013

(Argued: April 24, 2014          Decided:   October 31, 2014)

Docket No. 13-2581

_____

IN RE: DYNEGY, INC.,

*Debtor.*

STEPHEN LUCAS,

*Appellant,*

–v.–

DYNEGY INC.,

*Appellee.*

_____

B e f o r e:

WALKER and HALL, *Circuit Judges*, and MURTHA,* *District Judge*.

_____

Appeal from an order entered by the United States District Court for the Southern

District of New York (Koeltl, J.), dismissing a bankruptcy appeal.   The district court

_____

        * Judge J. Garvan Murtha, of the United States District Court for the District of
Vermont, sitting by designation.

concluded appellant lacked standing to opt out of or object to the joint reorganization plan of appellee and its subsidiary on behalf of a putative class in a separate securities class action against appellee. Because appellant had opted out in his individual capacity, the district court also found he was not affected by the bankruptcy court's order and thus lacked standing to pursue his personal objection to the plan on appeal. We affirm.

————————

NICHOLAS I. PORRITT and STEVEN J. PURCELL, Levi & Korsinsky LLP, New York, NY, *for Appellant.*

J. CHRISTOPHER SHORE and JULIA M. WINTERS, White & Case LLP, New York, NY, *for Appellee.*

————————

MURTHA, J.

Appeal from an order entered by the United States District Court for the Southern District of New York (Koeltl, J.), dismissing a bankruptcy appeal. The district court concluded appellant lacked standing to opt out of or object to the joint reorganization plan of appellee and its subsidiary on behalf of a putative class in a separate securities class action against appellee. Because appellant had opted out in his individual capacity, the district court also found he was not affected by the bankruptcy court's order and thus lacked standing to pursue his personal objection to the plan on appeal. We affirm.

2

I.  Background

In November 2011, Dynegy Holdings LLC, a subsidiary of Dynegy Inc., filed a voluntary Chapter 11 petition in the U.S. Bankruptcy Court for the Southern District of New York (Morris, J.).  Dynegy Inc.'s only asset was ownership of 100% of the equity of Dynegy Holdings.  In March 2012, Charles Silsby filed a securities class action complaint against Dynegy Inc. and three individual defendants, two executives of the company and its alleged controlling shareholder, Carl C. Icahn, in the U.S. District Court for the Southern District of New York (Koeltl, J.).  Lucas v. Dynegy, Inc. (In re Dynegy, Inc.), No. 12 Civ. 8908, 2013 WL 2413482, at *1 (S.D.N.Y. June 4, 2013).  The complaint alleged dissemination of false and misleading information and failure to disclose material facts about Dynegy Inc.'s financial performance and prospects in violation of sections 10(b) and 20(a) of the Securities Exchange Act of 1934.[1]  Id. at *2.  The putative (i.e., not yet certified) class included investors who acquired Dynegy Inc. common stock between September 2, 2011 and March 9, 2012.  Id.  In May 2012, Dynegy Inc. and its subsidiaries, including Dynegy Holdings, (collectively, "Dynegy"), and certain major stakeholders reached an agreement settling claims stemming from allegations of fraudulent transfers between Dynegy Inc., Dynegy Holdings, and other subsidiaries.  Id. at *1.  Under the settlement agreement, the major stakeholders received an equity

---

[1] The district court has since granted the defendants' motion to dismiss, see Silsby v. Icahn, No. 12 Civ. 2307 (JGK), 2014 WL 1744132, at *19 (S.D.N.Y. Apr. 30, 2014), and the plaintiffs have appealed.

3

stake in the entity that would emerge from the bankruptcy of Dynegy.[2]  Id.  None of

the members of the putative class in the securities litigation were parties to the

settlement.

Dynegy Inc. followed its subsidiary into Chapter 11 reorganization.  Dynegy,

2013 WL 2413482, at *2.  This prompted an automatic stay of the securities class action

in the district court as to Dynegy Inc. but not the three individual defendants.  Id.  The

reorganization plan (the "Plan") contained a binding release of non-debtor third

parties—including the three individual defendants in the securities class action—from

liability unless a party opted out.  Id. at *2-3.  Because the release did not cover

intentional fraud, willful misconduct, gross negligence, or criminal conduct, only the

class action's section 20(a) claim but not their 10(b) claim came within the scope of the

release.  Id.  The release also precluded litigation against the non-debtor third parties.

Id.

On July 9, 2012, the bankruptcy court held a hearing on Dynegy Inc.'s

bankruptcy petition.  Dynegy, 2013 WL 2413482, at *2.  At the hearing, an attorney for

Charles Silsby, the named plaintiff in the securities litigation, argued there was

inadequate notice to certain shareholders of the putative class regarding the third-party

release and the opt-out mechanism.  The bankruptcy court, however, approved

---

[2] The reorganization plan required the merger or combination of Dynegy Inc. and Dynegy Holdings to form the surviving entity.  Dynegy Inc. officially filed for bankruptcy on July 6, 2012.

4

Dynegy's disclosure statement and form of notice to the non-voting class. The bankruptcy court did not require Dynegy to distribute the Plan to holders of a claim or interest in the "Non-Voting Classes," some of whom are members of the putative securities class. But, the bankruptcy court did require Dynegy to individually notify holders as of July 2, 2012 of claims and interest in Non-Voting Classes of their status. This notice of Non-Voting Class status included an explanation of the third-party release. The court also required Dynegy to publish a Confirmation Hearing Notice in The New York Times and The Wall Street Journal. This notice explained the Plan included a binding release of non-debtor third parties from liability unless a party opted out. The bankruptcy court did not, however, require individual notice to members of the putative class who had sold all of their shares of Dynegy prior to July 2, 2012.

On July 13, 2012, the district court appointed appellant Stephen Lucas as lead plaintiff in Silsby v. Icahn, the securities class action litigation. Dynegy, 2013 WL 2413482, at *4. On August 20, 2012, Lucas requested the district court expand the Lead Plaintiff Order to allow him to represent the putative class in Dynegy's bankruptcy proceedings. Id. The district court denied this request. Id.

On August 24, 2012, Lucas opted out of the release in the bankruptcy court on his behalf as well as on behalf of the putative class in the securities litigation. Id. He also submitted an objection to the Plan on behalf of himself and the putative class. Id.

5

The bankruptcy court confirmed the Plan on September 10, 2012, subject to hearing Lucas' objection. J.A. 242. The bankruptcy court delayed ruling on his objection in order to allow settlement negotiations. J.A. 255. The parties, however, did not reach a settlement, and during a hearing on October 1, 2012, the bankruptcy court overruled Lucas' objection, holding he lacked standing both in his individual capacity, J.A. 444, and on behalf of the putative class, J.A. 422. The bankruptcy court found: (1) Lucas could not object to the release on his own behalf because he had personally opted out (and thus, the release did not affect his rights, and he could not appeal); and (2) Lucas could neither opt out of the release nor object to the Plan on behalf of the putative class because he lacked the authority to represent the class outside of the separate securities litigation in the district court. The bankruptcy court determined in order to represent the class in bankruptcy court, Lucas was required to follow class action procedures under the Federal Rules of Bankruptcy Procedure. The bankruptcy court stated Lucas "utterly failed to move under Rule 9014 to make Rule 23 applicable in this bankruptcy case, despite having more than two months to do so." J.A. 455. The bankruptcy court refused to "permit [Lucas] to contravene the federal rules, and to operate as though his class were certified without a Court having made that determination." J.A. 455. Ruling on the merits of Lucas' objections to the Plan's

confirmation, the bankruptcy court determined the release was consensual because the affected parties received notice and did not opt out.   J.A. 458.

Lucas appealed to the district court on his behalf as well as on behalf of the putative class.   Dynegy, 2013 WL 2413482, at *5.   The district court agreed Lucas "lack[ed] standing to opt out of or object to the [r]elease on behalf of the putative class and to object to the [r]elease individually."   Id. at *10.   Accordingly, it did not reach the merits of Lucas' objections and dismissed his appeal.   This appeal followed.

II.   Discussion

A.  Standard of Review

Our review of the district and bankruptcy court decisions is plenary.   In re Halstead Energy Corp., 367 F.3d 110, 113 (2d Cir. 2004).   We review legal conclusions de novo and factual findings for clear error.   Id. at 114; see also In re Charter Commc'ns, Inc., 691 F.3d 476, 483 (2d Cir. 2012).

B.  Standing to Represent the Putative Class in Bankruptcy Court

Lucas argues his status as lead plaintiff in the securities litigation gives him standing to opt out of or object to the release on behalf of the putative class in the bankruptcy proceeding.   Lucas also argues he was not required to seek class action status in the bankruptcy court to assert such standing.   We disagree with both of these

7

arguments and hold Lucas does not have standing to represent the putative securities class in the bankruptcy proceeding.

In general, a plaintiff lacks standing to assert the rights or interests of third parties (the "Third Party Standing Doctrine"). Kane v. Johns-Manville Corp., 843 F.2d 636, 643 (2d Cir. 1988) (citing cases). Ordinarily, a party that seeks "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," does so via a class action. Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013); see also Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979). But here, Lucas failed to move for class action status in the bankruptcy court. Lucas, notwithstanding his failure to move, claims he has standing to represent the putative securities class in the bankruptcy proceeding.

Lucas contends that the Lead Plaintiff Order in the civil proceeding "authorize[d] [him] to act to prevent collateral attacks upon the claims of the [p]utative [c]lass through the bankruptcy proceeding." Appellant's Br. 21. See also J.A. 444. We disagree—the Lead Plaintiff Order provided no such authorization. First, "[i]t is well-settled that consent to being a member or the representative of a class in one piece of litigation is not tantamount to a blanket consent to any litigation the class counsel may wish to pursue." Reid v. White Motor Corp., 886 F.2d 1462, 1471-72 (6th Cir. 1989) (internal quotation marks and citations omitted). Second, to the extent Lucas has

8

fiduciary obligations as lead plaintiff in the securities litigation, those obligations do not "confer on him the status of a class representative in the bankruptcy proceeding for a class that has never been designated." Dynegy, 2013 WL 2413482, at *8. Third, the Lead Plaintiff Order unambiguously restricted Lucas to representation of the class in the securities litigation only. It "appoint[ed] Lucas as Lead Plaintiff to represent the interests of the class in the Action." J.A. 203 (emphasis added). The "Action" referred to "the above- captioned action," Silsby v. Icahn, the securities litigation in district court, not Dynegy's Chapter 11 proceedings in bankruptcy court. Id. And fourth, the district court specifically rejected Lucas' attempt to broaden the Lead Plaintiff Order to cover proceedings in the bankruptcy court. Dynegy, 2013 WL 2413482, at *4.

Lucas also argues he could not procedurally move for class action status in the bankruptcy proceeding because the proceeding was not a "contested matter." Again we disagree. The proceeding was a "contested matter," and therefore Lucas was required to make a motion under Federal Rule of Bankruptcy Procedure 9014 requesting class representative status.

Class actions apply in bankruptcy proceedings in two ways: (1) either automatically in "adversary proceedings;" or (2) at the discretion of the bankruptcy court in "contested matters." See Gentry v. Siegel, 668 F.3d 83, 88 (4th Cir. 2012). In a contested matter, the party seeking to rely on Rule 23 must file a motion under Rule

9

9014.  See id. at 88 ("Rule 9014 also authorizes the bankruptcy court, on motion, to make 'one or more of the other rules in Part VII' [Adversary Proceedings] applicable to contested matters, which includes Rule 7023 [Class Proceedings]." (quoting Fed. R. Bankr. P. 9014(c))); In re Ephedra Prod. Liab. Litig., 329 B.R. 1, 5 (S.D.N.Y. 2005) ("Rule 23 may be invoked against the debtor only if the bankruptcy court first makes a discretionary ruling under Rule 9014 to apply Rule 23 to the proof of claim.").  Thus, in a "contested matter," absent a successful motion under Rule 9014 requesting class representative status under Rule 7023, Rule 23 cannot be invoked in bankruptcy proceedings.

A contested matter is defined as "the litigation to resolve" an "actual dispute, other than an adversary proceeding, before the bankruptcy court."  Fed. R. Bankr. P. 9014 advisory committee's notes (1983).  Lucas argues there was not a "contested matter" before the bankruptcy court because "by simply objecting to the Plan and seeking to opt-out of the [r]elease, [he] sought only to preserve the rights of the class members," Appellant's Reply Br. 9, not to seek relief from the bankruptcy court, Appellant's Br. 20.  "All disputes in bankruptcy," however, "are either adversary proceedings or contested matters."  In re Am. Reserve Corp., 840 F.2d 487, 488 (7th Cir. 1988) (citing Daniel R. Cowans, 1 Bankruptcy Law and Practice 189 (1986)).  An adversary proceeding must fall within one of the ten categories defined in Bankruptcy

10

Rule 7001. The proceeding here does not fit within any of those categories; therefore it must be a contested matter. Even aside from this rule, we have no doubt that Lucas' objection to the Plan plainly constitutes a "contested matter." See Fed. R. Bankr. P. 3020(b)(1) ("An objection to confirmation is governed by Rule 9014."); Fed. R. Bankr. P. 9014 advisory committee's notes; 9 Collier on Bankruptcy ¶ 9014.01 (Alan N. Resnick & Henry J. Somme eds., 16th ed.).

Because the bankruptcy proceeding was a contested matter, Lucas, to have standing to opt out or object on behalf of the putative securities class, was required to request class representative status under Rule 9014. See In re Ephedra, 329 B.R. at 5 ("[C]ounsel for the class claimants bear primary responsibility . . . by not affirmatively moving under Rule 9014(c) for class certification."). Lucas did not follow these procedures and thus cannot assert a right to represent a class. His failure to initiate class proceedings in compliance with the proper bankruptcy procedures, despite having had more than two months to comply with the rules, "rendered [Lucas] unable to represent a class that had never been designated by the Bankruptcy Court, much less assume the role of representative of such an undesignated class." Dynegy, 2013 WL 2413482, at *7.[3]

---

[3] Lucas argues requiring him to make a motion under Rule 9014 for class representative status would have been "impractical and absurd" given that discovery in the securities litigation was stayed and a responsive pleading was not yet filed. Appellant's Br. at 24-25. We see no reason why events in the securities litigation would affect his ability to initiate class action proceedings in the bankruptcy court. Lucas knew

In addition, Lucas cannot assert standing on behalf of the putative securities class in the bankruptcy proceeding because he personally opted out of the release, preserving his own section 20(a) claims.   Relying on Deposit Guaranty National Bank v. Roper, 445 U.S. 326 (1980), Lucas argues he can still assert standing even if his interest is arguably moot.   Roper, however, is inapposite.   In Roper, the Supreme Court considered whether a named plaintiff in a class action could appeal the denial of class certification after the named plaintiff's individual claims became moot.   Id. at 327. The Court held the "District Court's entry of judgment in favor of named plaintiffs over their objections did not moot their private case or controversy, and that respondents' individual interest in the litigation -- as distinguished from whatever may be their representative responsibilities to the putative class -- is sufficient to permit their appeal of the adverse certification ruling."   Id. at 340 (footnote omitted).   More recently, in Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523 (2013), the Supreme Court stated "Roper's holding turned on a specific factual finding that the plaintiffs' [sic] possessed a continuing personal economic stake in the litigation, even after the defendants' offer of judgment."   Id. at 1532.   Here, Lucas' economic stake remains the same, regardless of

early on in the bankruptcy proceedings (at least as early as July 6, 2012) that he objected to the opt-out procedures.   Nothing stopped him from making a Rule 9014 motion when he became lead plaintiff in the securities litigation on July 13, 2012, or at a minimum on August 20, 2012, when the district court denied his request to expand the Lead Plaintiff Order to allow him to represent the putative class in the bankruptcy proceedings.   Cf. In re Ephedra, 329 B.R. at 7 ("From the moment the Chapter 11 petition was filed, Cirak and the other class claimants had the right to move for class certification by virtue of 11 U.S.C. § 1109(b), which provides:   'A party in interest, including . . . a creditor, . . . may raise and may appear and be heard on any issue in a case under this chapter.'").

12

whether he is allowed to opt out on behalf of the putative securities class because he personally opted out of the release. This case also does not involve class certification. See id. ("Roper's dictum was tethered to the unique significance of certification decisions in class-action proceedings."). This also is not a case in which the defendant in a class action "picked off" the lead plaintiffs without settling the rest of the class's claims in an effort to frustrate the objectives of the class action. See Roper, 445 U.S. at 339. Nothing in Roper leads us to conclude Lucas has standing in the bankruptcy proceedings.

Finally, Lucas claims the prudential limitation of the Third Party Standing Doctrine would not be "subvert[ed] or "contravene[d]" if he were granted standing to represent the putative securities class in the bankruptcy litigation. It is true under some "special circumstances," for example when a "litigant's interests are closely allied with those of the third parties" or "third parties are unable to assert their own rights," a plaintiff may assert third-party claims. Kane, 843 F.2d at 643-44 (citing Singleton v. Wulff, 428 U.S. 106, 115-18 (1976)). The circumstances presented in this case, however, are incompatible with these exemptions. The bankruptcy court found no evidence suggesting "that any class member . . . who has not opted out [of the third-party releases in the Plan] now wishes to do so." J.A. 448. The court further stated, "[t]here was no evidence presented . . . to indicate that [putative members] did not leave this class at will.

13

Rather, the evidence [has] shown that all known equity holders were provided with notice and an opportunity to be heard and chose not to do so." J.A. 449. Given that Lucas fails to set forth a clear allegiance between his interest and that of unknown parties or any evidence that they may be incapable of asserting their own rights, his claim does not merit an exemption from the rule. Thus, we see no reason to depart from the "valuable prudential limitation" of the Third Party Standing Doctrine. Kane, 843 F.2d at 643; see id. at 644 ("The prudential concerns limiting third-party standing are particularly relevant in the bankruptcy context.").

In conclusion, Lucas' status as lead plaintiff of the putative class in the district court securities litigation did not automatically extend to the bankruptcy proceedings. In order to have opted out or objected on behalf of the class, Lucas first must have sought the application of Rule 23 in bankruptcy court. Because he did not, Lucas represented no one but himself. Furthermore, since he opted out of the release in his individual capacity, Lucas lacks standing to appeal the order confirming the Plan.

III.    Conclusion

For the foregoing reasons, the district court's order dismissing Lucas' appeal is AFFIRMED.