**In re REPUBLIC TECHNOLOGIES INTERNATIONAL, LLC, et al., Debtors.**

**Republic Technologies International, LLC, Plaintiff,**

v.

**William Maley, et al., Defendants.**

Bankruptcy No. 01–5117.
Adversary No. 01–5122.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Feb. 21, 2002.

Sean Riley, Sean Malloy, Jeff Keiper, McDonald, Hopkins, Burke & Haber Co., LPA, Cleveland, OH, Martin Bienenstock, Deborah Piazza, Weil, Gotshal & Manges, LLP, New York City, for plaintiff-debtors.

Linda Ashar, Michael Niederbaumer, Wickens, Herzer, Panza, Cook & Batista, Lorain, OH, for defendants.

**MEMORANDUM OPINION DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT AND SCHEDULING PRE–TRIAL CONFERENCE**

MARILYN SHEA–STONUM,
Bankruptcy Judge.

On July 11, 2001, Republic Technologies International, LLC ("RTI") filed a complaint initiating this adversary proceeding. Through its complaint, RTI seeks a declaratory judgment that the automatic stay in effect in its main chapter 11 case also acts to stay a pending state court lawsuit against two of RTI's former managers. During a pre-trial conference held in this matter on September 25, 2001, the parties indicated to the Court that the issues raised in RTI's complaint could be decided by dispositive motions. Thereafter, the following pleadings were filed: (1) "Defendants' William Maley and Marjorie L. Maley's Motion for Summary Judgment (Oral Argument Requested)" [**docket #12**]; (2) "Debtor Republic Technologies International, LLC's Motion for Summary Judgment" [**docket #13**]; (3) "Brief in Opposition to Plaintiff Republic Technology International, LLC's Motion for Summary Judgment" [**docket #14**]; (4) "Republic Technologies International, LLC's Brief in Opposition to Defendants' Motion for Summary Judgment" [**docket #15**]; (5) "Defendants' Reply to Republic Technologies International, LLC's Brief in Opposition to Defendants' Motion for Summary Judgment" [**docket #16**]; and (6) "Republic Technologies International, LLC's Reply to Defendants' Brief in Opposition" [**docket #19**].[1]

This proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this District on July 16, 1984. It is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and 157(b). The following constitutes this Court's conclusions of law pursuant, to the undisputed facts in this matter and FED.R.BANKR.P. 7052.

**A. BACKGROUND**

The following background facts are not disputed by the parties to this adversary proceeding.

1. William Maley was employed by RTI from February 7, 2000 until October 23, 2000 (the "Maley Employment Period") at RTI's Lorain, Ohio operations facility (the "Lorain Facility").

2. At all times during the Maley Employment Period, Mark Miller ("Miller") was the Area Manager for RTI and Mr. Maley's supervisor.

3. At all times during the Maley Employment Period Kenneth ("Knaga") was a human resources manager for RTI having some responsibilities at the Lorain Facility.

4. Miller was separated from his employment with RTI in September 2001 and Knaga was separated from his employment with RTI in March 2001.

5. On April 2, 2001, RTI and several subsidiaries commenced their reorganization cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. RTI and its filing subsidiaries are continuing in possession of their property and are operating and managing their businesses, as debtors in possession, pur-

---

1. In their motion for summary judgment, the Maleys requested oral argument on this matter. Because this matter cannot be decided on the parties' dispositive motions and because Local Bankruptcy Rule 9013–1 provides that motions shall, generally, be decided without oral argument, no such argument will be scheduled.

suant to § 1107 and § 1108 of the Bankruptcy Code.

6. On April 17, 2001, Mr. Maley initiated a lawsuit in the Court of Common Pleas for Lorain County, Ohio against RTI, Knaga and Miller alleging that the three defendants participated in or caused Mr. Maley's termination from RTI without just cause in violation of Ohio's age discrimination statute and public policy (the "Maley Lawsuit").

7. Given the operation of § 362(a) of the Bankruptcy Code as to RTI, a First Amended Complaint was filed in the Maley Lawsuit on May 21, 2001. That First Amended Complaint added Marjorie Maley's name and address in the caption as a plaintiff and removed RTI's named and address from the caption as a defendant.

8. RTI maintains and pays for a "Directors, Officers and Private Company Liability Insurance Policy" which includes employment practices liability coverage, underwritten by National Union Fire Insurance Company of Pittsburgh, Pennsylvania (the "Insurance Policy").

9. The Insurance Policy was in effect during the Maley Employment Period, at the time Mr. Maley was terminated from RTI, at the time RTI commenced its bankruptcy and at the time the Maley Lawsuit was filed. The Insurance Policy is also currently still in effect.

10. As former management employees, Knaga and Miller are covered under the Insurance Policy as "Insureds" and the claims raised in the Maley Lawsuit fall within the Insurance Policy's definition of "Employment Practices Violations."[2]

## B. THE SUMMARY JUDGMENT STANDARD

A court shall grant a party's motion for summary judgment "if ... there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); FED.R.BANKR.P. 7056. The party moving for summary judgment bears the initial burden of showing the court that there is an absence of a genuine dispute over any material fact, *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), and, upon review, all facts and inferences must be viewed in the light most favorable to the nonmoving party. *Searcy v. City of Dayton,* 38 F.3d 282, 285 (6th Cir.1994); *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir.1991).

## C. DISCUSSION

■ The parties' arguments regarding whether or not the Maley Lawsuit is stayed by RTI's bankruptcy filing focus on two provisions of § 362(a) of the Bankruptcy Code. The first of those is § 362(a)(3) which provides that the automatic stay prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." *See* 11 U.S.C. § 362(a)(3). Pursuant to this provision, RTI contends that the Maley Lawsuit is stayed because the Insurance Policy is property of its bankruptcy estate and any action by the Maleys against that policy (whether directly against RTI or indirectly against RTI's former managers who are covered under the Insurance Policy) is an action against estate property

---

**2.** Neither the insurance company that issued the Insurance Policy nor Miller and Knaga are parties to this adversary proceeding. Accordingly, these undisputed facts only bind RTI and the Maleys in this proceeding and are not intended to be a determination of any other party's rights relative to the Insurance Policy and/or the Maley Lawsuit.

which is prohibited by § 362(a)(3) of the Bankruptcy Code. Mr. and Mrs. Maley contend that, even if the Insurance Policy is deemed to be estate property, their lawsuit is merely an action to recover proceeds of that policy which are not estate property because RTI has no legal or equitable right to those proceeds.

The parties' arguments also focus on § 362(a)(1) of the Bankruptcy Code which states that the automatic stay prohibits "the commencement or continuation ... of a judicial, administrative, or other action against the debtor that was or could have been commenced before the commencement of the case...." *See* 11 U.S.C. § 362(a)(1). Pursuant to this provision, RTI contends that the Maley Lawsuit is stayed because, although RTI is no longer a named defendant therein, its rights and liabilities are so closely aligned with Knaga and Miller that it is still a real party in interest in that suit and that because the Maleys' original and first amended complaint are virtually identical, they are now attempting to circumvent the automatic stay by proceeding only against RTI's managers. Because they have removed RTI as a named defendant in the Maley Lawsuit and because Ohio law permits supervisors and managers to be sued directly and held personally liable for unlawful discriminatory acts, Mr. and Mrs. Maley contend that any act to stay the Maley Lawsuit pursuant to § 362(a)(1) of the Bankruptcy Code would be inappropriate.

### 1. WHETHER THE MALEY LAWSUIT IS STAYED PURSUANT TO 11 U.S.C. § 362(A)(3)

Section 362(a)(3) of the Bankruptcy Code stays any action to obtain possession of or to exercise control over estate property regardless of whether the action at issue has been taken against the debtor or against some third party, 11 U.S.C. § 362(a)(3). Section 541(a) of the Bankruptcy Code defines "property" of a bankruptcy estate as "all legal or equitable interest of the debtor in property as of the commencement of the case" and the scope of that definition is intended to be broad. 11 U.S.C. § 541(a)(1); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205, n. 9, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *Demczyk v. The Mutual Life Ins. Co. of New York (In re Graham Square, Inc.)*, 126 F.3d 823, 831 (6th Cir.1997).

At the commencement of its bankruptcy case, RTI clearly had legal rights under the Insurance Policy as it was the owner of that policy. *See Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55 (5th Cir.1993) ("Insurance policies are property of the estate because, regardless of who the insured is, the debtor retains certain contract rights under the policy itself."). Accordingly, the Insurance Policy is property of RTI's bankruptcy estate. *Cf. Homsy v. Floyd (In re Vitek, Inc.)*, 51 F.3d 530 (5th Cir.1995); *St. Clare's Hosp. & Health Center v. Ins. Co. of North America (In re St. Clare's Hosp. & Health Center)*, 934 F.2d 15 (2nd Cir.1991); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Titan Energy, Inc. (In re Titan Energy, Inc.)*, 837 F.2d 325 (8th Cir.1988); *Tringali v. Hathaway Machinery Co., Inc.*, 796 F.2d 553 (1st Cir.1986); *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir.1986); *The Minoco Group of Cos., Ltd. v. First State Underwriters Agency of New England Reinsurance Corp. (In re The Minoco Group of Cos., Ltd.)*, 799 F.2d 517 (9th Cir.1986); *Hanover Ins. Co. v. Tyco Indus., Inc.*, 500 F.2d 654 (3rd Cir.1974).

The finding that the Insurance Policy is property of RTI's bankruptcy estate does not end the inquiry into whether the Maley Lawsuit is stayed by § 362(a)(3), of the Bankruptcy Code as a determination must still be made regarding whether or not the prosecution of that lawsuit is an act "to

obtain possession of" or "to exercise control over" the Insurance Policy. Specifically, it must be decided (1) whether allowing the Maley Lawsuit to go forward would obligate RTI, under the Insurance Policy, to pay a $250,000 retention and (2) whether RTI has any legal or equitable right to proceeds of the Insurance Policy that may be paid out to the Maleys. In looking at these issues, a consideration of the purpose behind Directors' and Officers' ("D & O") insurance policies will prove useful.[3]

Under common law, courts were divided over the right of directors and officers to receive indemnification from the corporation for liabilities arising out of service to the corporation. Such division arose from disagreement as to whether officials who were charged with some form of misconduct could be considered to be acting for the benefit of the corporation. *Western Fiberglass, Inc. v. Kirton, McConkie & Bushnell,* 789 P.2d 34, 37 (Utah Ct.App. 1990). In 1939, a New York Supreme Court decided *New York Dock Co. v. McCollom* whereby it denied indemnification to directors who were vindicated in a derivative suit. *Id.* Although the directors were deemed to not be liable for the misconduct alleged against them, they were nonetheless forced to pay their own attorney fees and other legal costs because it was not apparent that the corporation benefitted in any way from the directors' successful defense of that litigation. *New York Dock Co. v. McCollom,* 173 Misc. 106, 16 N.Y.S.2d 844 (N.Y.Sup.Ct.1939). That decision prompted the adoption of the first indemnification statutes, and today all 50 states have enacted laws which address corporate indemnification.

These enabling statutes vary in content, but can be classified into two categories, permissive "enabling" statutes, which give a corporation power to indemnify its officers and directors under certain circumstances, and mandatory or "right" statutes, which give the officer or director an enforceable right to indemnification when statutory standards of conduct are met. *Western Fiberglass, Inc. v. Kirton, McConkie & Bushnell,* 789 P.2d 34, 37 (Utah Ct.App.1990) (other citation omitted). *See also* Joseph P. Monteleone & Nicholas J. Conca, *Directors and Officers Indemnification and Liability Insurance: An Overview of Legal and Practical Issues,* 51 Bus.Law. 573 (May 1996); Robert L. Jennings and Kenneth A. Horky, *Indemnification of Corporate Officers and Directors,* 15 Nova L.Rev. 1357 (Spring 1991).

The enactment of corporate indemnification statutes created a twofold need for insurance. The corporation needed a policy to reimburse it for monies paid to officers and directors for indemnification and the officers and directors themselves required insurance for those situations in which the corporation could not or would not indemnify them. Gilbert J. Schroeder, *Handling the Complex Fidelity or Financial Institution Bond Claim: The Liability of the Insured's Officers and Directors and Their D & O Carrier,* 21 Tort & Ins.Law J. 269, 283 (Winter 1986). Generally, a D & O insurance policy contains two insuring clauses. The first clause provides direct liability coverage to the officers and

---

**3.** Throughout this Memorandum Opinion, general references will be made to D & O insurance policies even though the Insurance Policy at issue also provides coverage for managers and employees. Nothing raised in the parties' pleadings or in the Court's own research would indicate that general, background principles regarding D & O insurance policies would not also apply to insurance policies that also cover managers and employees.

directors of a corporation for claims asserted against them for certain wrongful acts. *Ochs v. Lipson (In re First Cent. Fin. Corp.)*, 238 B.R. 9, 13 (Bankr. E.D.N.Y.1999). *See also* Nan Roberts Eitel, *Now You Have It, Now You Don't: Directors' and Officers' Insurance After a Corporate Bankruptcy*, 46 Loy.L.Rev. 585, 588 (Fall 2000). The second clause provides derivative coverage to the corporation for reimbursement of monies it may expend to indemnify its officers and directors either by statute or pursuant to the corporation's bylaws. *Ochs v. Lipson (In re First Cent. Fin. Corp.)*, 238 B.R. at 13–14.

D & O policies are obtained for the protection of individual directors and officers. Indemnification coverage does not change this fundamental purpose. There is an important distinction between the individual liability and the reimbursement portions of a D & O policy. The liability portion of the policy provides coverage directly to officers and directors, insuring the individuals from personal loss for claims that are not indemnified by the corporation. Unlike an ordinary liability insurance policy, in which a corporate purchaser obtains primary protection from lawsuits, a corporation does not enjoy direct coverage under a D & O policy. It is insured indirectly for its indemnification obligations. In essence and at its core, a D & O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection.

*Ochs v. Lipson (In re First Cent. Fin. Corp.)*, 238 B.R. 9, 16 (Bankr.E.D.N.Y. 1999).[4]

The Insurance Policy at issue in this case contains these two "typical" insuring clauses. Clause A provides "direct" coverage to RTI's directors, officers and employees and Clause B provides "indirect" coverage to RTI for any indemnification of directors, officers and employees.[5] *See* In-

---

4. An example of a "typical" scenario implicating the two prongs of coverage under D & O policies of insurance is as follows:

[B]oth the corporation and one or more of its officers [are] named as defendants in a litigation. The corporation then determines that pursuant to state law and corporation's by-laws, defense costs may be advanced on behalf of the officers in connection with the litigation. After the officers provide the corporation with undertakings, the corporation will indemnify the officers by paying for legal fees incurred by the officers. This represents an advancement of indemnification and if the case proceeds to trial and a final adjudication, the facts established at trial will determine finally whether or not the officers are entitled to indemnification.

While the litigation remained pending, the D & O policy would reimburse the corporation to the extent that it indemnified the officers. If the corporation was not able to indemnify the officers due to financial inability or for other reasons, the director and officers liability coverage part would be triggered and the policy would directly pay or reimburse those defense costs incurred by individual officers.

Wayne E. Borgeest, *Directors and Officers Liability Insurance: A Primer*, 629 Prac.Law Inst., Litigation and Admin. Practice Course Handbook Series/Litig., 135, 139–40 (April 2000).

5. The pertinent text of each of those provisions reads as follows:

COVERAGE A: INDIVIDUAL INSURED INSURANCE

This policy shall pay the Loss of each and every Director, Officer or Employee of the Company arising from a Claim first made against such Insureds during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in their respective capacities as Directors, Officers and Employees of the Company except when and to the extent that the Company has indemnified such Insureds. . . .

COVERAGE B: PRIVATE COMPANY INSURANCE

This policy shall pay the Loss of the Company arising from a:

surance Policy, pg. 1 (attached to RTI's Motion for Summary Judgment [**docket # 13**] as Exhibit 1 to Exhibit C).[6]

***Whether allowing the Maley Lawsuit to go forward would obligate RTI, under the Insurance Policy, to pay a $250,000 retention.*** Item 5 of the Declarations portion of the Insurance Policy provides, *inter alia,* for a $250,000 retention or deductible amount for losses arising from employment practices claims (the "Retention Provision"). *See* Insurance Policy, unnumbered pg. 2 (attached to RTI's Motion for Summary Judgment [**docket # 13**] as Exhibit 1 to Exhibit C). It is RTI's contention that pursuant to the Retention Provision it is obligated to pay the first $250,000 of defense costs and/or a settlement or judgment on behalf of any insured (including Miller and Knaga) regardless of whether RTI is itself a named defendant. Mr. and Mrs. Maley, however, dispute RTI's characterization of its duties pursuant to the Retention Provision of the Insurance Policy:

Plaintiff states that it is self-insured for the first $250,000.00 of Miller and Knaga's defense costs and settlement/judgment. This is supposedly an agreement between Plaintiff and its management employees. The self insurance has ab-

(I) Claim first made against the Company, or

(ii) Claim first made against an Individual Insured,

during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer during the terms of this policy for any actual or alleged Wrongful Act, but, in the case of (ii) above, only when and to the extent that the Company has indemnified the Individual Insured for such Loss pursuant to law, common or statutory, or contract, or the Charter or By-laws of the Company duly effective under such law which determines and defines such rights of indemnity. . . .

6. Both parties attach to the pleadings and make reference to the Insurance Policy that

solutely *no* bearing upon this case, for it is nothing more than a contractual right of Miller and Knaga against Plaintiff. Defendant should not be prohibited from seeking damages against Miller and Knaga simply because they may have an independent indemnification claim against Plaintiff for legal costs and any settlement or judgment.

*See* Maleys' Motion for Summary Judgment, pg. 13 [**docket # 12**].

In support of its contention that it has some duty under the Retention Provision, RTI relies upon the affidavit of John George, Vice President of Finance and Treasurer. Through that affidavit, Mr. George sets forth the following:

5. Kenneth Knaga and Mark Miller as former managers of Republic who allegedly participated in the wrongful termination of Mr. Maley's employment, are "Insureds" under the Insurance Policy. As Insureds, Messrs. Knaga and Miller are entitled to defense costs and indemnity for monetary exposure associated with any settlement or judgment in connection with the Maley's wrongful discharge lawsuit.

essentially forms the crux of this matter. However, neither party attached a complete copy of that Insurance Policy. For instance, both of the parties' copies of the Insurance Policy end with an unnumbered page which sets forth an "Endorsement # 9" dealing with a "Prior Acts Exclusion." The second to last page of each of the copies of the Insurance Policies attached to the parties' pleadings is page number 10 which sets out Clause 6 which addresses retention. Throughout the Insurance Policy, however, references are made to Clauses 8 and 9. The Court can only assume the neither party thought the omitted portions of the Insurance Policy were pertinent to the Court's determination of this matter.

6. The Insurance Policy provides for a self-insured "Retention" in the amount of $250,000.... That means Republic is responsible for all costs associated with the legal defense against the Maleys' lawsuit against the Insureds, Knaga and Miller, as well as any monetary settlement or judgment, up to the amount of $250,000. In other words, under the Insurance Policy, Republic is contractually bound to pay defense costs and any settlement/judgment amounts incurred by Knaga and Miller up to a maximum of $250,000, whether Republic is named a defendant in the lawsuit or not. Accordingly, if the Maleys' lawsuit proceeds, Republic will necessarily incur legal defense fees and potential monetary exposure for liability and/or settlement on behalf of Knaga and Miller, who are "Insureds" under the Insurance Policy. To date, Republic has already incurred substantial legal fees and costs in defending against the Maleys' state court lawsuit and in pursuing an extension of the automatic stay via an adversary proceeding in the U.S. Bankruptcy Court.

*See* George Affidavit, pgs. 2–3 (attached to RTI's Motion for Summary Judgment [docket # 13] as Exhibit C). Mr. George's Affidavit does not, however, indicate whether he was the RTI representative who negotiated the terms of the Insurance Policy nor does it set forth how and why he came to the legal conclusion that RTI is "contractually bound to pay defense costs and any settlement/judgment amounts incurred by Knaga and Miller up to a maximum of $250,000, whether Republic is named a defendant in the lawsuit or not." Aside from merely citing to the Retention Provision, RTI's pleadings do not provide any analysis of how that provision interacts with other provisions of the Insurance Policy (namely, the Clause A "direct" coverage) nor does RTI cite to any legal authority to support its construction of the Retention Provision.[7]

In support of their argument that RTI is not contractually bound to pay the Retention Provision should the Maley Lawsuit be allowed to proceed, the Maleys direct the Court's attention to the following portion of the Insurance Policy:

## 6. RETENTION CLAUSE

The Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the Retention amount stated in Item 5 of the Declarations, such Retention amount *to be borne by the Company or the Insureds* and shall remain uninsured, with regard to all Loss under: (1) Coverage A or B(ii) for which the Company has indemnified or is permitted or required to indemnify the Individual Insured(s) ("Indemnifiable Loss"), or (2) Coverage B(I). A single Retention amount shall apply to Loss arising from all Claims

---

**7.** A portion of the Insurance Policy at issue does appear to specifically address "Defense Provisions:"

The Insurer does not assume any duty to defend, provided, however, the Named Entity may at its sole option tender to the Insurer the defense of a Claim for which coverage is provided by this policy to the Insurer in accordance with Clause 8 of the policy. Regardless of whether the defense is so tendered, the Insurer shall advance Defense Costs (excess of the applicable retention amount) of such Claim prior to its final disposition. Selection of counsel to defend a "Designated Claim" shall be made in accordance with Clause 9 of the policy.

As noted in footnote 6, *supra*, the portions of the Insurance Policy that RTI has omitted from its pleadings include the referenced Clauses 8 and 9.

alleging the same Wrongful Act or Related Wrongful Act.

*See* Insurance Policy, pg. 10 (attached to RTI's Motion for Summary Judgment [docket # 13] as Exhibit 1 to Exhibit C) (emphasis added). Pursuant to this provision, the Maleys argue that:

> [b]ecause Miller and Knaga are separate "Insureds," and the policy calls for the retention to be paid by the "Insureds," Miller and Knaga are individually responsible for the retention as it applies to each of them. Furthermore, the policy does not state [RTI] is obligated to pay this retention on Miller's and Knaga's behalf.

*See* Maleys' Brief in Opposition to RTI's Motion for Summary Judgment, pgs. 4–5 [docket # 14].

The Maleys' argument in this regard has merit given that the Insurance Policy provides "direct" coverage to Miller and Knaga under Clause A and given that the Insurance Policy also provides that the Retention Amount is to be borne by RTI *or* an Insured. RTI has not argued that the wording of the Retention Clause is ambiguous when read independently or in conjunction with any other portion of the Insurance Policy. *See United Nat'l Ins. Co. v. SST Fitness Corp.*, 182 F.3d 447, 449 (6th Cir.1999) (in interpreting insurance policy under Ohio law, words and phrases used in policy must be given their natural and commonly accepted meaning). *See also GenCorp. Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 821 (6th Cir.1999) (the term "or" is generally considered a "disjunctive" term which provides alternatives).[8] Instead, RTI merely sets forth self-serving, conclusory statements that it has an obligation under the policy to pay the Retention Amount on behalf of its former employees.[9]

Given that the Insurance Policy provides "direct" coverage to Miller and Knaga as Insureds thereunder and given that the Retention Clause is written so that responsibility for payment of the Retention Amount falls upon either RTI or an Insured, the Court finds that if prosecution of the Maley Lawsuit is allowed to go forward, the Insurance Policy does not contractually obligate RTI to pay the Retention Amount on Miller and Knaga's behalf.[10]

8. As noted in footnote 6, *supra*, the Court was not provided with a complete copy of the Insurance Policy, and, as such, it is unaware of whether or not that policy contains a choice of law provision. Also, neither party addressed in their pleadings what state's law should govern interpretation of the Insurance Policy. Notwithstanding such omissions, the rules of construction cited by the Sixth Circuit are basic ones that would not appear to differ much from state to state.

9. Another example of such conclusory statements appear in RTI's Reply to the Maleys' Brief in Opposition [docket # 19], pg. 2:

> Defendants' interpretation of the insurance policy wrongly assumes the "Company" and the "Insureds" are necessarily separate, independent and mutually exclusive of each other for purposes of the self-insured retention. In fact, by definition the Company is one of the "Insureds" under the policy, as well as its owner. As such, by the express terms of the policy Republic *is* responsible for the retention amount and the Debtor's assets *are* in danger if the Maleys' state court lawsuit goes forward.... John George ... has provided unopposed testimony that the Debtor is responsible for the costs of defense, settlement or judgment associated with the *Maley* lawsuit up to the self-insured retention amount of $250,000.... The express language of the policy, business reality and common sense all support Mr. George's interpretation.

10. As discussed in the latter part of this Memorandum Opinion, RTI may have a duty to indemnify its employees pursuant to statute or its bylaws. If this is the case, and if an employee pays the Retention Amount under the Insurance Policy, RTI might be required to reimburse the employee for that payment. In that case, a lawsuit that does not name RTI

 *Whether RTI has any legal or equitable right to proceeds of the Insurance Policy that may be paid out to the Maleys.* When an insurance policy has been found to be estate property, a determination that proceeds of that policy are also property of a debtor's estate does not necessarily follow. *Compare, e.g., Louisiana World Exposition, Inc. v. Federal Ins. Co. (In re Louisiana World Exposition, Inc.),* 832 F.2d 1391 (5th Cir.1987) (finding that insurance proceeds are not part of a debtor's estate) *with Tringali v. Hathaway Mach. Co., Inc.,* 796 F.2d 553 (1st Cir.1986) (finding that insurance proceeds are part of a debtor's estate). Instead, the facts of each particular case must be analyzed to determine whether or not payment of insurance proceeds could alter the value of the bankruptcy estate at issue.

The Maleys contend that any proceeds they might receive are not a part of RTI's estate because, pursuant to the Insurance Policy, those proceeds would be paid directly to them as victims of Knaga and Miller's wrongful acts. Because of such direct payment the Maleys conclude that the value of RTI's bankruptcy estate would not be affected:

> If Miller and Knaga are eventually found liable and subsequently pay the Defendants' damages, they can then proceed against Plaintiff for indemnification. Plaintiff perceives that as something that would affect its bankruptcy estate, and, therefore Miller and Knaga should enjoy a stay of litigation. However, Miller and Knaga's alleged right to indemnification does not entitle them to stay the proceedings in state court.

*See* Maleys' Motion for Summary Judgment, pg. 13 [**docket # 12**]. In attempting to counter the Maleys' argument, RTI again relies upon its conclusion that it has an obligation under the Insurance Policy to pay the Retention Amount:

> The Maleys argue at length about the distinction between insurance policy ownership and insurance policy proceeds.... While such arguments may be of academic interest, the are misplaced in this proceeding. The cases Defendants cite do not address the fundamental issue of the existence of a large self-insured retention which results in direct financial exposure to an insured debtor. The self-insured retention is the single most pertinent component of Republic's insurance policy and the reason *why* the Debtor's assets are at risk. The first $250,000 of so called "proceeds" will come directly out of Republic's coffers, whether in the form of defense costs or indemnity costs. Therefore, the continuation of the *Maley* lawsuit will directly impact Republic's financial interests— even if it were to have no other involvement in the case. The existence and terms of the insurance policy *require* that Republic participate, at least in financial terms, in the defense of the case. Defendants present no facts or legal authorities to refute this dispositive fact.

*See* RTI's Brief in Opposition to Maleys' Motion for Summary Judgment, pg. 5 [**docket # 15**]. The problem with each of these arguments is that the parties have failed to set forth, and hence analyze, the pivotal fact regarding this matter. Name-

---

but does name a non-debtor officer, director or employee could be construed as an act to "obtain possession of" or "exercise control over" estate property being that estate funds would have to be expended for indemnification of the payment of the Retention Amount. *But see, Zenith Labs., Inc. v. Sinay (In re Zenith Labs., Inc.),* 104 B.R. 659, 666 (D.N.J. 1989) (discussing application of § 502(e)(1)(B) of the Bankruptcy Code on claims for indemnification that, at the time of a bankruptcy filing, are merely contingent). Such issue was not raised by RTI and, hence, will not be addressed any further herein.

ly, whether or not RTI has an obligation separate and apart from the Insurance Policy to indemnify Knaga and Miller relative to the Maley Lawsuit.

As noted above, Clause B of the Insurance Policy provides "indirect" coverage to RTI for reimbursement of indemnification costs. Also, as noted above, whether or not RTI is required to indemnify Miller and Knaga is dictated by statute and/or RTI's bylaws. Because the Insurance Policy caps the amount of proceeds that will be paid out per Loss (as that term is defined in the Insurance Policy) at $10,000,000, if a Loss is greater than $10,000,000, then any amount in excess thereof could become an obligation of RTI and, hence, affect the value of its estate. *See* Insurance Policy, unnumbered pg. 1, pg. 9 (attached to RTI's Motion for Summary Judgment [**docket #13**] as Exhibit 1 to Exhibit C).

In deciding an issue similar to the one at bar, the court in *Zenith Labs., Inc. v. Sinay (In re Zenith Labs., Inc.)*, 104 B.R. 659 (D.N.J.1989) found that proceeds of a D & O policy were not estate property because the corporation's indemnification obligation was only a speculative one. In that case, investors filed a class action suit against Zenith Laboratories, Inc. ("Zenith") and three of its executives. After Zenith filed a chapter 11 bankruptcy petition the plaintiff class filed a motion seeking a modification of the automatic stay to allow it to proceed with its litigation against Zenith. Zenith then filed a motion seeking a stay of the class action lawsuit against the individual, non-debtor executives. As support for its motion, Zenith contended that the proceeds of its D & O insurance policy were property of its bankruptcy estate. In order to allow the court to fully analyze the matter; the parties provided the court with **both** the insurance policy at issue and the relevant statutory

and contractual law regarding Zenith's indemnification obligation:

> The $25,000,000 policy in question covers any litigation expenses and damages incurred by the directors and officers as a result of their misconduct. The policy carries a $10,000 deductible. The only instance in which the debtor would receive payment under the policy would be if the debtor were required to indemnify the directors and officers for any expenses or damages which they incurred in the course of litigation pursued against them. This is a matter governed by the corporate bylaws and relevant state law.

*Zenith Labs., Inc. v. Sinay (In re Zenith Labs., Inc.)*, 104 B.R. 659, 665 (D.N.J. 1989). After reviewing the relevant state's statute and the corporation's bylaws, the court determined that proceeds from the D & O insurance policy at issue would not, in this specific case, impact the value of Zenith's estate:

> As these provisions demonstrate, the debtor is not required by its bylaws to indemnify its directors; it may choose to do so if the directors acted in good faith and in such a manner that a reasonable person might conclude was not opposed to the best interests of the corporation. Although the debtor argues that it might choose to do so, and that it would then be required to pay any amount exceeding the policy coverage, this is a purely theoretical possibility. Nor is the debtor unconditionally required to reimburse the directors for litigation expenses; the debtor must pay only if the directors prevail.

*Id.* at 665–66.

In this case, neither party has provided the Court with a copy of RTI's bylaws or with citations to the relevant state statutes and case law regarding RTI's indemnification obligations. Nor has either party an-

alyzed that information in conjunction with the Insurance Policy's limitation on liability and the prayer for relief set forth in the Maley Lawsuit. Accordingly, the Court is without enough information to decide on cross motions for summary judgment the issue of whether RTI has any legal or equitable right to proceeds of the Insurance Policy that may be paid out to the Maleys.

## 2. WHETHER THE MALEY LAWSUIT IS STAYED PURSUANT TO 11 U.S.C. § 362(A)(1)

■ Section 362(a)(1) of the Bankruptcy Code prohibits the commencement or continuation of a judicial action against the debtor that was or could have been commenced before the debtor's bankruptcy case was filed. 11 U.S.C. § 362(a)(1). Generally, the stay provided for in that section is available only as to actions against the debtor and not as to actions against a debtors' co-defendants. However, when "unusual circumstances" exist or when a third party is taking action that circumvents the automatic stay in a debtor's bankruptcy case, a bankruptcy court may conclude that the third party's action should also be halted.

■ *Whether "unusual circumstances" exist to justify extension of the automatic stay to the Maley Lawsuit.* Notwithstanding the fact that it was dismissed as a defendant in the Maley Lawsuit, RTI claims that it is still a real party in interest in that suit. Accordingly, RTI argues that the Maley Lawsuit should be stayed. In support of this argument, RTI relies upon the Fourth Circuit's decision in *A.H. Robins Co., Inc. v. Piccinin* which found that a bankruptcy court could properly stay proceedings against non-debtor, co-defendants when "unusual circumstances" exist. In its motion for summary sets forth the following excerpt from that case:

This "unusual situation," it would seem, arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that judgment against the third-party defendant will in effect be a judgment or finding against the debtor. **An illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case. To refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute.**

*See* RTI's Motion for Summary Judgment, pg. 10 [**docket # 13**], *citing A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.1986) (emphasis added by RTI). At this juncture of the case (and, as was more fully discussed in the earlier portion of this Memorandum Opinion), this argument must fail because this Court is without any evidence that RTI has an obligation to indemnify Miller and Knaga.

RTI also argues that the automatic stay should apply to the Maley Lawsuit because "there would be nothing to prevent the Maleys from pursuing their lawsuit against Knaga and Miller through settlement or judgment and then later, if the automatic stay is lifted, pursuing the *same* action against Republic (the real employer)." *See* RTI's Motion for Summary Judgment, pg. 12 [**docket # 13**]. RTI does not, however, discuss when the statute of limitations on the Maleys' cause of action against it would run nor does it discuss the effect a potential discharge in bankruptcy would have on that action.

RTI also argues that, unless the Maley Lawsuit is stayed, its ability to formulate and pursue a restructuring plan would be impaired.

Current Republic managers would be forced to expend efforts, attention and resources in defending against the lawsuit ... particularly [because] ... neither Knaga nor Miller is currently employed by Republic. Such efforts would include, but not be limited to, collecting and producing employment records and other documents in connection with discovery, appearing for oral depositions and scheduling conferences, working with defense counsel and other activities essential to litigation. All of this disruption would be in addition to the ongoing depletion of funds available under the insurance Policy, property of the Debtor's estate.

*See* RTI's Motion for Summary Judgment, pg. 14 [**docket # 13**]. While it may be true that RTI's current managers would have to spend some time addressing discovery issues in the Maley Lawsuit, the fact that Miller and Knaga are no longer employed by RTI must also be considered as none of the time that they will have to spend in defending that lawsuit will detract in any way from RTI's ability to formulate and pursue a restructuring plan.

This Court agrees with the basic notion from *A.H. Robins Co., Inc. v. Piccinin* and other courts holding similarly that in "unusual circumstances" the automatic stay may be extended to prevent a third party from going forward with a lawsuit against a debtor's non-debtor, co-defendants.[11] *See, e.g., Croyden Assoc. v. Alleco, Inc.,* 969 F.2d 675 (8th Cir.1992); *Lukas, Nace, Gutierrez & Sachs, Chrtd. v. Havens,* 245 B.R. 180 (D.D.C.2000); *Sudbury v. Escott (In re Sudbury),* 140 B.R. 461 (Bankr. N.D.Ohio 1992); *Zenith Labs., Inc. v. Sinay (In re Zenith Labs., Inc.),* 104 B.R. 659 (D.N.J.1989). However, based upon the current record in this case, the Court is without enough information to determine on cross motions for summary judgment whether or not such "unusual circumstances" exist.[12]

■ *Whether the Maleys, by pursuing the Maley Lawsuit, are taking action that circumvents the automatic stay its RTI's bankruptcy case.* In their pleadings, RTI accurately points out that the original and first amended complaint filed in the Maley Lawsuit maintain exactly the same factual and legal allegations. In fact, with the exception of simply removing RTI's name and address from and adding Marjorie Maley's name and address to the caption, those complaints appear to be identical. Moreover, there is nothing in those complaints alleging that Miller and Knaga acted outside the scope of their

11. To support its contention that the automatic stay should not be extended to halt the Maley Lawsuit, the Maleys rely upon the Sixth Circuit's decision in *Lynch v. Johns–Manville Sales Corp.,* 710 F.2d 1194 (6th Cir.1983). Although the court in that case did hold that the automatic stay would not halt proceedings against non-debtors, that case is distinguishable from the one at bar as the parties seeking extension of the automatic stay were two of debtor's solvent co-defendants and *not* the debtor itself: "Nothing in the legislative history counsels that the automatic stay should be invoked in a matter which *would advance the interests of some third party,* such as debtor's co-defendants, *rather than the debtor* or its creditors." *Id.* at 1197 (emphasis added). Moreover, the Sixth Circuit, in *Parry v. Mo-*

*hawk Motors of Michigan, Inc.,* 236 F.3d 299, 314 (6th Cir.2000), *cert. denied,* 533 U.S. 951, 121 S.Ct. 2594, 150 L.Ed.2d 752 (2001) held that the automatic stay could be extended to non-debtor, co-defendants when "unusual circumstances" are present.

12. Some of the cases relied upon by RTI to support its arguments that the automatic stay should be extended to halt the Maley Lawsuit also discuss the application of § 105 of the Bankruptcy Code. *See, e.g., A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 1003 (4th Cir. 1986). Because RTI has not cited to or relied upon that Bankruptcy Code section, it will not be discussed in this Memorandum Opinion.

employment with RTI or in contravention of some established RTI employment policy.

In their pleadings, the Maleys contend that, pursuant to Ohio law, they may proceed directly against Miller and Knaga:

> Therefore, Defendants have an unequivocal right to seek relief for their injuries from those responsible for causing the same—namely, Plaintiff [sic], Miller and Knaga. But because Plaintiff [RTI] has filed for Chapter 11 Bankruptcy, Defendants are unable to proceed with any claim against it. However, under Ohio law, Miller and Knaga are independently liable for their wrongful misconduct and Defendants should have the right to seek relief from them in state court.

*See* Maleys' Motion for Summary Judgment, pg. 6 [**docket # 13**]. Interestingly, the Maleys never explain why, if they are permitted under Ohio law to take direct action against employees, they willfully violated the automatic stay by naming RTI as a defendant when they clearly knew that it had filed for bankruptcy:

> 5. Maley was employed by Republic Technologies International ("RTI") in the City of Lorain, Lorain County, Ohio from February 7, 2000 to October 23, 2000. Maley was an employee within the meaning of chapter 4112 of the Ohio Revised Code, R.C. § 4112.01(A)(1), (2). RTI has filed to reorganized under Chapter 11 of the U.S. Bankruptcy Code, a matter pending in the U.S. Bankruptcy Court in Akron, Ohio.

*See* Original Complaint, pg. 2 (attached to RTI's Motion for Summary Judgment [**docket # 13**] as Exhibit B). *See also, e.g., Cuffee v. Atlantic Bus. & Cmty. Dev. Corp. (In re Atlantic Bus. & Cmty. Dev. Corp.),* 901 F.2d 325, 329 (3rd Cir.1990) (interpreting the term "willful" (which is not defined in the Bankruptcy Code) to simply mean acting intentionally and deliberately while knowing of a pending bankruptcy).

In support of its contention that the Maleys' action against Miller and Knaga is a circumvention of the automatic stay, RTI again sets forth allegations that it would incur substantial costs if the Maley Lawsuit were allowed to proceed.

> Specifically, if the *Maley* lawsuit were to proceed against Knaga and Miller, it would certainly impair Republic's ability to effectively formulate and pursue its restructuring plan.... Current Republic managers would be forced to expend efforts, attention and resources in defending against the lawsuit. This is particularly so given that neither Knaga nor Miller is currently employed by Republic.... All of this disruption would be in addition to the ongoing depletion of the funds available under the insurance Policy, property of Debtor's estate.

*See* RTI's Motion for Summary Judgment, pg. 14 [**docket # 13**]. RTI also contends that

> [i]f the Maleys are permitted to avoid the stay in the manner requested, any number of former Republic employees could use the clever tactic of filing employment discrimination lawsuits against Republic's current and former managers individually without naming Republic as a defendant. Republic's insurance policy, retention amount *and Republic itself* as the ultimate employing entity would be implicated in each and every lawsuit. Such a result would be fatally expensive and disruptive to Republic's restructuring efforts and would render the automatic stay meaningless.

*See* RTI's Reply to Maleys' Brief in Opposition, pg. 3 [**docket # 19**]. Nowhere in its pleadings, however, does RTI set forth whether or not similar lawsuits are or may be filed against RTI managers nor does it set forth how many of such lawsuits were

filed against RTI in the past or are filed, on average, against companies that are similar to RTI in size and/or business.[13] Although RTI's arguments could have merit (especially given the fact that the Maleys willfully violated the automatic stay and that the complaints filed in the Maley Lawsuit are virtually identical), the current record before the Court cannot support a finding, on summary judgment alone, that the Maleys are acting in circumvention of the automatic stay in RTI's bankruptcy case by pursuing the Maley Lawsuit against only Miller and Knaga.

## D. CONCLUSION

Based upon the foregoing, the Court finds that on the state of the record in this adversary proceeding, neither party is entitled to judgment as a matter of law. Accordingly, the cross motions for summary judgment are hereby denied.

In order to determine how this case should now proceed, a pre-trial conference shall be held on *March 19, 2002 at 11:00 a.m.* in the Bankruptcy Courtroom, Second Floor, U.S. Courthouse and Federal Building, 2 South Main Street, Akron, Ohio. During that pre-trial conference, the parties shall be prepared to discuss whether, in an effort to promote judicial economy, the issue of whether the Maleys Lawsuit is a circumvention of the automatic stay in RTI's bankruptcy case should be bifurcated from the rest of RTI's complaint and set for a trial on the merits.

**IT IS SO ORDERED.**

---

13. This lack of information is especially interesting given that "typical" D & O insurance policies contain a "notice of circumstances" provision which allow insureds to report, during the policy period, circumstances that might give rise to future claims. In the event that such claims are ultimately made, even if they are made after the policy expires, they will be deemed to have been made at the time notice was provided. Nan Roberts Eitel, *Now You Have It, Now You Don't: Directors' and Officers' Insurance After a Corporate Bankruptcy*, 46 Loy.L.Rev. 585, 588 (Fall 2000).